[No. A103835. First Dist., Div. One. June 1, 2004.]

PHYSICIANS COMMITTEE FOR RESPONSIBLE MEDICINE, Plaintiff and Appellant, v.
TYSON FOODS, INC., Defendant and Respondent.

COUNSEL

Animal Law Associates, David Blatte, Daniel Kinburn and Mindy Kursban for Plaintiff and Appellant.

Sidley Austin Brown & Wood, Timothy T. Scott, Geoffrey M. Ezgar and James M. Harris for Defendant and Respondent.

**OPINION**

**SWAGER, J.**—Physicians Committee for Responsible Medicine (hereafter PCRM) appeals an order granting the motion of defendant and respondent Tyson Foods, Inc. (hereafter Tyson) pursuant to Code of Civil Procedure section 425.16 to strike four causes of action of PCRM's complaint. We reverse.

## PROCEDURAL BACKGROUND

In a suit for injunctive relief, PCRM alleges that Tyson made false and deceptive representations about chicken products that it sold to consumers in California. PCRM alleges it is a nonprofit health-advocacy organization, which claims to have 24,000 members in the state. Tyson is the world's largest poultry producer and sells more than 25 percent of the total chicken meat products consumed by Americans.

The complaint alleges that Tyson engaged in two advertising campaigns, which disseminated false and deceptive statements about its products, in violation of Business and Professions Code section 17500. The first and second causes of action concern advertisements carried on the *allrecipes.com* Web site, in which Tyson allegedly portrayed chicken meat as a "heart-healthy" food and advised consumers to serve chicken "as often as you like." The advertisement then lists Tyson's chicken products that have been certified by the American Heart Association as being low in saturated fats and cholesterol. PCRM alleges that the advertisement creates "the false and misleading impression" that chicken "is a health food that can protect against the risk of developing heart disease." It alleges further that "the majority of Tyson chicken products contain substantial levels of fat and cholesterol, the consumption of which will not only fail to reduce the risk of heart disease, but is actually likely to increase such risk."

A second advertising campaign, alleged in the third through sixth causes of action, appeared in high-circulation magazines in California and was broadcast on television programs. PCRM alleges that "[e]ach advertisement claims that Tyson chicken products are 'all natural.' In particular, the ads state, 'You give them [referring to the reader's children] quality chicken that's all natural because you can.' In smaller print, the ads state, 'Every Tyson chicken product begins with all natural chicken. That means there are no additives, and it's minimally processed. And that means a lot.' " PCRM alleges that, in fact, "Tyson raises its chickens in a 'factory farm' system in which the chickens are genetic mutations that do not exist in nature, the chickens are vaccinated, the chickens are medicated immediately after being hatched, the chickens are crowded together by the tens of thousands under one roof, and

the chickens are routinely and regularly fed antibiotics at therapeutic and sub-therapeutic levels to combat and prevent diseases facilitated by the unnatural overcrowding and to stimulate an unnatural growth rate." PCRM claims that the representations in this campaign not only constitute false advertising within the terms of Business and Professions Code section 17500 but also an "unfair and fraudulent" business practice proscribed by Business and Professions Code section 17200.

The complaint prays for injunctive relief enjoining Tyson from making the alleged false and deceptive representations regarding its chicken products; requiring Tyson to undertake a public information campaign "to correct and remedy its current and prior false and deceptive advertising"; and requiring Tyson "to place appropriate warnings on its chicken products and on any advertising for its chicken products indicating the possible health consequences of consuming those products."

Tyson responded by filing a demurrer, a motion to strike portions of the complaint pursuant to Code of Civil Procedure section 436, and a motion to strike the complaint in its entirety pursuant to Code of Civil Procedure section 425.16, commonly know as the anti-SLAPP statute (an acronym referring to strategic lawsuits against public participation). We are concerned here only with the anti-SLAPP motion, which attacks the complaint as alleging causes of action arising from Tyson's exercise of its right of free speech "in connection with a public issue."

In an order filed on June 10, 2003, the trial court found that Tyson met its burden under the anti-SLAPP statute "of demonstrating that all of plaintiff's claims arise from acts done by Tyson in furtherance of its right of free speech in connection with a public issue." Under the anti-SLAPP statute, the burden then shifted to PCRM to show a probability that it would prevail on these claims. In this respect, the court distinguished between the advertisements promoting chicken as a "heart-healthy" food and those claiming chicken products to be "natural." It found that PCRM satisfied its burden of demonstrating a probability of success with respect to the advertisement representing Tyson products to be beneficial to a healthy heart but "failed to meet its burden of presenting evidence sufficient to demonstrate a probability of success" with respect to the third through sixth causes of action, involving representation that Tyson's products are a "natural" food. Accordingly, the court granted Tyson's anti-SLAPP motion to strike with respect to the third through sixth causes of action.

PCRM moved for reconsideration of the order granting in part the motion to strike. The trial court granted the motion for reconsideration but affirmed

its earlier order. Pursuant to Code of Civil Procedure section 425.16, subdivision (j), PCRM filed a notice of appeal from the portion of the order granting the anti-SLAPP motion with respect to the third through sixth causes of action.

## DISCUSSION

### A. *Application of Senate Bill No. 515*

The appeal presents the initial, and dispositive, issue of whether reversal is required by the enactment during the pendency of the appeal of Senate Bill No. 515 (2003–2004 Reg. Sess.), codified as Code of Civil Procedure section 425.17. The statute was intended to curb abuse of the anti-SLAPP statute (the anti-SLAPP statute). It was signed into law on September 6, 2003, shortly after filing of the notice of appeal, and became effective on January 1, 2004.[1]

As stated in the seminal decision, *Aetna Cas. & Surety Co. v. Ind. Acc. Com.* (1947) 30 Cal.2d 388, 393 [182 P.2d 159], "[i]t is an established canon of interpretation that statutes are not to be given a retrospective operation unless it is clearly made to appear that such was the legislative intent." (See Code Civ. Proc. § 3; *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1207 [246 Cal.Rptr. 629, 753 P.2d 585]; *Mannheim v. Superior Court* (1970) 3 Cal.3d 678, 686 [91 Cal.Rptr. 585, 478 P.2d 17].) " 'A retrospective law is one which affects rights, obligations, acts, transactions and conditions which are performed or exist prior to the adoption of the statute.' [Citations.]" (*Aetna Cas. & Surety Co. v. Ind. Acc. Com., supra,* at p. 391; see *Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 839 [123 Cal.Rptr.2d 40, 50 P.3d 751].) As stated somewhat more succinctly in *Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243 [62 Cal.Rptr.2d 243, 933 P.2d 507], "A statute has retrospective effect when it substantially changes the legal consequences of past events." (See *Kizer v. Hanna* (1989) 48 Cal.3d 1, 7 [255 Cal.Rptr. 412, 767 P.2d 679].)

The repeal of a statutory right or remedy, however, presents entirely distinct issues from that of the prospective or retroactive application of a statute. A well-established line of authority holds: " ' "The unconditional repeal of a special remedial statute without a saving clause stops all pending actions where the repeal finds them. If final relief has not been granted before the repeal goes into effect it cannot be granted afterwards, even if a judgment has been entered and the cause is pending on appeal. *The reviewing court must dispose of the case under the law in force when its decision is rendered.*" ' [Citations.]" (*People v. Bradley* (1998) 64 Cal.App.4th 386, 397

---

[1] We grant PCRM's request for judicial notice filed November 14, 2003.

[75 Cal.Rptr.2d 244]; *People v. Acosta* (1996) 48 Cal.App.4th 411, 419 [55 Cal.Rptr.2d 675]; *People v. $31,500 United States Currency* (1995) 32 Cal.App.4th 1442, 1452 [38 Cal.Rptr.2d 836]; *Chapman v. Farr* (1982) 132 Cal.App.3d 1021, 1024 [183 Cal.Rptr. 606].)

In *Beckman v. Thompson* (1992) 4 Cal.App.4th 481 [6 Cal.Rptr.2d 60], this principle was applied to a statutory power to dismiss a civil action. A line of California Supreme Court cases held that a civil action could not be dismissed under the doctrine of forum non conveniens if the plaintiff was a California resident. In 1986 the Legislature enacted a statute, with a five-year sunset provision, that made the residence of the plaintiff immaterial to a forum non conveniens motion, thereby permitting dismissal of actions filed by California residents. Relying on this statute, the trial court granted a motion to dismiss an action brought by a California resident on the ground of forum non conveniens. While the case was pending on appeal, the amendment expired, restoring the previous common law rule barring dismissal. The court treated the expiration of the statute as equivalent to repeal of a statutory power of dismissal and reversed: "Where a right or remedy did not exist at common law but is dependent on a statute, the repeal of the statute without a savings clause destroys such right unless it has been reduced to a final judgment. [Citations.] If the judgment is not yet final because it is on appeal, the appellate court has a duty to apply the law as it exists when the appellate court renders its decision. [Citations.] [¶] . . . [¶] . . . The order of dismissal must be reversed because it is contrary to the line of California Supreme Court cases precluding dismissal of a California plaintiff's action." (*Id.* at p. 489.)

In *Governing Board v. Mann* (1977) 18 Cal.3d 819 [135 Cal.Rptr. 526, 558 P.2d 1], the court treated legislation enacted during appeal as a partial repeal of a school district's power to dismiss a tenured school teacher. A provision of the Education Code provided generally that conviction of "a felony or any crime involving moral turpitude" constituted grounds for dismissal of a teacher. When the plaintiff pled guilty to a charge of possession of marijuana, the district secured a declaratory judgment upholding its power under this provision to dismiss plaintiff from his teaching position. During the pendency of the appeal, the Legislature enacted a comprehensive statutory scheme to govern the treatment of marijuana offenders, which prohibited a public entity from revoking employment rights under the circumstances of the plaintiff's case.

Reversing the declaratory judgment, the court held "although repeals by implication are not favored [citation], when, as here, a subsequently enacted specific statute directly conflicts with an earlier, more general provision, it is settled that the subsequent legislation effects a limited repeal of the former statute to the extent that the two are irreconcilable. [Citations.] Accordingly,

at present plaintiff school district enjoys no statutory authority to dismiss Mann on the basis of his past possession of marijuana conviction." (*Governing Board v. Mann, supra,* 18 Cal.3d 819, 828.) The repeal of the district's authority to dismiss plaintiff required reversal of the judgment: "Although the courts normally construe statutes to operate prospectively, the courts correlatively hold under the common law that when a pending action rests solely on a statutory basis, and when no rights have vested under the statute, 'a repeal of such a statute without a saving clause will terminate all pending actions based thereon.' [Citation.]" (*Id.* at p. 829.)

█ We regard the anti-SLAPP statute as being a statutory remedy falling within these precedents. The anti-SLAPP statute provides a procedure for the early dismissal, before trial or discovery, of meritless cases aimed at chilling first amendment rights. To invoke the statute, a defendant must file a motion to strike directed at the plaintiff's pleadings and supported by affidavits. All discovery proceedings are stayed upon the filing of the motion. (Code Civ. Proc., § 425.16, subd. (g).) To secure dismissal of the action, the defendant must make a prima facie showing that the cause of action arises from "any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue" as that phrase is defined by subdivision (e) of the section. If the defendant succeeds in making this showing, the burden then shifts to the plaintiff to establish a reasonable probability that the plaintiff will prevail in the action. (Code Civ. Proc., § 425.16, subd. (b)(1).) An order granting dismissal under this procedure is subject to appeal. (Code Civ. Proc., § 425.16, subd. (j).)

In *Robertson v. Rodriguez* (1995) 36 Cal.App.4th 347, 356 [42 Cal.Rptr.2d 464], the court aptly characterized Code of Civil Procedure section 425.16 as "a procedural screening mechanism for determining whether a plaintiff can demonstrate sufficient facts to establish a prima facie case to permit the matter to go to a trier of fact." Other decisions describe section 425.16 as a "procedural statute" (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1119 [81 Cal.Rptr.2d 471, 969 P.2d 564], fn. 7), or "rule of procedure," (*Ludwig v. Superior Court* (1995) 37 Cal.App.4th 8, 21 [43 Cal.Rptr.2d 350]) which " 'provides a mechanism through which such . . . complaints can be evaluated at an early stage of the litigation process.' [Citation.]" (*People v. Health Laboratories of North America, Inc.* (2001) 87 Cal.App.4th 442, 449 [104 Cal.Rptr.2d 618].)

█ Code of Civil Procedure section 425.17 clearly deprives Tyson of any basis to strike PCRM's suit pursuant to the anti-SLAPP statute. Subdivision (c) of section 425.17 provides: "Section 425.16 [the anti-SLAPP statute] does not apply to any cause of action brought against a person primarily engaged

in the business of selling or leasing goods or services, . . . arising from any statement or conduct by that person if both of the following conditions exist: [¶] (1) The statement or conduct consists of representations of fact about that person's . . . goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing sales or leases of . . . the person's goods or services, . . . [¶] (2) The intended audience is an actual or potential buyer or customer, . . . notwithstanding that the conduct or statement concerns an important public issue." The present suit comes squarely within this provision: PCRM alleges deceptive advertising practices, consisting of misleading statements about Tyson's chicken products, that were made for the purpose of promoting sales of these products. Since subdivision (c) of section 425.17 applies unambiguously to PCRM's suit, we do not need to consider whether subdivision (b) also applies.

    ■ Under *Beckman* and *Mann*, the repeal during the pendency of appeal of the statutory basis for striking PCRM's suit would call for reversal of the trial court's order. Hence, if we assume that the trial court properly applied the anti-SLAPP statute in granting Tyson's motion to strike, the enactment of Code of Civil Procedure section 425.17 operated as a repeal of the statutory authorization for the court's order and mandates reversal. This conclusion makes it unnecessary to reach the merits of the trial court's interpretation of the anti-SLAPP statute. Reversal is called for whether or not the trial court erred in its interpretation of the statute. If there was no error in its interpretation, the order granting the motion to strike still must be reversed as being predicated on a statutory power of dismissal that was extinguished during the pendency of the appeal.

    The recent decision *Brenton v. Metabolife International, Inc.* (2004) 116 Cal.App.4th 679 [10 Cal.Rptr.3d 702] reviewed an order denying a motion to strike under the anti-SLAPP statute on facts that are otherwise indistinguishable from the present case and reached the same conclusion that we reach here. The plaintiff alleged an unfair business practice based on allegedly false advertising of a pharmaceutical product. Senate Bill No. 515 came into effect during the pendency of an appeal from the order denying the defendant's motion. Following *Mann*, the court held that Code of Civil Procedure section 425.17, subdivision (c), operated to extinguish any right that the defendant might have had to a dismissal under the anti-SLAPP statute. (*Brenton v. Metabolife International, Inc., supra,* at pp. 687–691; see also *Metcalf v. U-Haul International, Inc.* (2004) 118 Cal.App.4th 1261 [13 Cal.Rptr.3d 686].)

    The *Brenton* decision reasoned that the defendant's "authority to seek dismissal under section 425.16 'rests solely on statutory grounds, and thus under the settled common law rule the repeal of the . . . statutory authority [by newly enacted section 425.17] necessarily defeats' the effort to invoke the

statute to justify dismissal, 'even if a [trial court] judgment has been entered and the cause is pending on appeal.' " (*Brenton v. Metabolife International, Inc., supra,* 116 Cal.App.4th 679, 691.) In response to the defendant's argument that it properly invoked the anti-SLAPP statute, the court stated: "the fact that a party acted in an authorized manner at the time he or she invoked the former version of a procedural or remedial statute at trial is no impediment to the appellate court applying the current version of that procedural or remedial statute when evaluating the appeal from the trial court's ruling." (*Ibid.*)

Arguing that the *Brenton* decision is unpersuasive, Tyson maintains that the anti-SLAPP statute is not a remedial statute but rather confers a substantive immunity from suit. It relies on *Myers v. Philip Morris Companies, Inc., supra,* 28 Cal.4th 828, 839 [123 Cal.Rptr.2d 40, 50 P.3d 751], for the proposition that a statutory amendment removing a preexisting statutory immunity from suit may not be applied retroactively without a clear indication of legislative intent. The *Myers* decision concerned the effect of legislation granting tobacco companies immunity from certain product liability lawsuits, which was enacted in 1988 and repealed 10 years later. The court held that the repeal did not operate retroactively and therefore the tobacco companies continued to enjoy immunity for conduct that occurred during the 10-year immunity period.

In support of its characterization of the anti-SLAPP statute as a statutory immunity, Tyson cites a federal decision applying the federal procedural rule governing appeals from collateral orders. (*Batzel v. Smith* (9th Cir. 2003) 333 F.3d 1018, 1025.) *Batzel* notes, "California lawmakers wanted to protect speakers from the trial itself rather than merely from liability. . . . [¶] . . . Thus, a defendant's rights under the anti-SLAPP statute are in the nature of immunity: They protect the defendant from the burdens of trial, not merely from ultimate judgments of liability." (*Ibid.*) The interest protected by the statute, the court concluded, was sufficient to bring it within the federal criteria of an appealable order. Similarly, another federal decision refers in dicta to "the important, substantive state interests furthered by the Anti-SLAPP statute." (*U.S. ex rel. Newsham v. Lockheed Missiles* (9th Cir. 1999) 190 F.3d 963, 973.)

The procedural issue adjudicated in *Batzel* bears no analogy to the issue on appeal in this case, but we recognize that the court accurately analyzed the statute as shielding defendants from the burden of trial of meritless claims. In this respect, the anti-SLAPP statute serves an interest analogous to a limited immunity from suit. But statutory remedies commonly serve an interest in efficient and early adjudication that diminishes the burden of litigation. The forum non conveniens statute at issue in *Beckman v. Thompson, supra,* 4 Cal.App.4th 481, falls within this description. The importance of this interest does not

transform the statute to anything other than a statutory remedy. Thus, the fact that the anti-SLAPP statute shields litigants from trial of meritless claims arising from the exercise of first amendment freedoms does not alter the fact that it serves as a mechanism for early adjudication of such claims, in other words, as a statutory remedy.

## B. *Constitutionality*

Lastly, Tyson argues that Code of Civil Procedure section 425.17, subdivision (c), did not effect a partial repeal of the anti-SLAPP statute because it is a constitutionally invalid attempt "to regulate speech concerning 'important public issue[s].' " It predicates this contention on the language of subdivision (c) that exempts defined statements for the marketing of goods from Code of Civil Procedure section 425.16, "notwithstanding that the . . . statement concerns an important public issue." (Code Civ. Proc., § 425.17, subd. (c).)

We do not consider, however, that Code of Civil Procedure section 425.17, subdivision (c), restricts or regulates speech by redefining the availability of a procedure for early adjudication of claims. This contention was expressly rejected in *Brenton*. The defendant there argued that section 425.17, subdivision (c), did not satisfy the standards of *Central Hudson Gas & Elec. v. Public Serv. Comm'n* (1980) 447 U.S. 557 [65 L.Ed.2d 341, 100 S.Ct. 2343] for the regulation of commercial speech. The court found the argument "unpersuasive because that statute does not purport to regulate, restrict, condition or penalize [the defendant's] ability as a speaker freely to engage in commercial speech; it merely regulates or restricts [the defendant's] ability as a litigant to seek dismissal of certain lawsuits at a particular stage of the litigation. [The defendant] cites no authority holding a speaker has a First Amendment right to specialized procedural remedies against a private lawsuit seeking to impose liability for unprotected commercial speech, and we are unaware of any case law holding there is a constitutional imperative that a legislature must make procedural screening devices available to preempt those private lawsuits." (*Brenton v. Metabolife International, Inc., supra*, 116 Cal.App.4th 679, 692, fn. omitted.)

The *Brenton* court relied in part on language from *Regan v. Taxation with Representation of Wash.* (1983) 461 U.S. 540, 549 [76 L.Ed.2d 129, 139, 103 S.Ct. 1997], cited in *Watson v. Fair Political Practices Com.* (1990) 217 Cal.App.3d 1059, 1072 [266 Cal.Rptr. 408]. In *Regan*, the United States Supreme Court rejected a challenge to the provision in Internal Revenue Code section 501(c)(3) that it restricted lobbying activities of organizations qualifying for tax exempt status. The Court held that "a legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right, and thus is not subject to strict scrutiny." (*Regan v. Taxation with*

*Representation of Wash., supra,* at p. 549.) The legislative decision to provide a procedure for early adjudication of claims affecting First Amendment freedoms is analogous to a decision to subsidize the exercise of a fundamental right by conferring tax exempt status. The withdrawal of such an exceptional statutory privilege does not impose a burden on constitutional freedoms. By holding that Tyson is not entitled to invoke the anti-SLAPP remedy, we do not compromise or prejudice its right to raise First Amendment issues in defense of PCRM's suit.

## DISPOSITION

The order granting Tyson's motion to strike the third through sixth causes of action pursuant to Code of Civil Procedure section 425.16 is reversed.[2]

Marchiano, P. J., and Stein, J., concurred.

Respondent's petition for review by the Supreme Court was denied September 22, 2004. George, C. J., did not participate therein.

---

[2] In view of our reversal, we find no need to address the other interesting issues raised in this appeal.