[No. B176461. Second Dist., Div. Eight. Sept. 27, 2005.]

THE FOUNDATION FOR TAXPAYER AND CONSUMER RIGHTS et al.,
Plaintiffs and Respondents, v.
JOHN GARAMENDI, as Insurance Commissioner, etc., et al., Defendants;
MERCURY INSURANCE GROUP, Intervener and Appellant.

1376

COUNSEL

Douglas L. Hallett, Joseph B. Miller, Marc J. Levine; and Victor Poltrock for Intervener and Appellant.

Harvey Rosenfield and Pamela M. Pressley for Plaintiff and Respondent the Foundation for Taxpayer and Consumer Rights.

Mark Savage and Norma Garcia for Plaintiffs and Respondents Consumers Union of U.S., Inc., Southern Christian Leadership Conference of Greater Los Angeles and National Council of La Raza.

Richard A. Marcantonio and Michelle N. Rodriguez for Plaintiffs and Respondents.

OPINION

**FLIER, J.**—Mercury Insurance Group (Mercury) appeals an award of attorney fees and costs following a denial of its special motion to strike a petition and complaint as a strategic lawsuit against public participation (SLAPP).[1] Mercury was not a named defendant but obtained leave to intervene in the action for the express purpose of filing a special motion to strike. The trial court found Mercury's special motion to strike was frivolous and awarded petitioners their attorney fees and costs. We affirm.

## FACTS AND PROCEDURAL HISTORY

A. *The Complaint*

On October 10, 2003, the Foundation for Taxpayer and Consumer Rights, Consumers Union of the United States, Inc., Southern California Leadership Conference of Greater Los Angeles and National Council of La Raza (petitioners) filed a petition for writ of mandate and complaint (complaint) to invalidate Senate Bill No. 841 (2003–2004 Reg. Sess.) (Sen. Bill 841).[2] The

---

[1] In a separate opinion issued today, we affirm the trial court's judgment in the underlying case. (*Foundation for Taxpayer and Consumer Rights v. Garamendi* (2005) 132 Cal.App.4th 1354 [34 Cal.Rptr.3d 354].) The underlying facts and procedural history are described at length in the companion case, and we do not repeat them here.

[2] Sen. Bill 841 was passed by the Legislature as an urgency measure and was signed into law by Governor Davis on August 2, 2003. (Stats. 2003, ch. 169, § 2.) In general, Sen. Bill 841 amended the Insurance Code to grant insurers the right to offer automobile insurance discounts to previously insured applicants but to exclude the previously uninsured from receiving such "persistency" discounts.

complaint alleged Sen. Bill 841 was an invalid and unconstitutional amendment of Proposition 103, the "Insurance Rate Reduction and Reform Act," that was passed by the voters in 1988. Petitioners sought to enjoin defendants John Garamendi, Commissioner of Insurance of the State of California (Insurance Commissioner), and the State of California (State) from implementing or enforcing Sen. Bill 841.

Among other things, the complaint referred to Sen. Bill 841 as an "insurer-sponsored" legislation. Although petitioners named only the Insurance Commissioner and the State as defendants, the body of the complaint contained several references to Mercury.

Specifically, the complaint alleged that Mercury had previously sponsored a bill (Sen. Bill No. 689 (2001–2002 Reg. Sess.) (Sen. Bill 689)) that had failed to become law. Petitioners further alleged: "Despite public controversy, both over the substance of the bill and the campaign cash that its sponsor, Mercury Insurance, had spent in the period surrounding its introduction, [Sen. Bill] 689 passed both houses" of the Legislature, only to be vetoed by Governor Davis. (Fn. omitted.) Under the heading, "Another Infusion Of Political Contributions From Mercury" (underscoring omitted), the complaint alleged that Sen. Bill 689 was substantially resurrected by a new bill, Sen. Bill 841, that was sponsored by Mercury, "a major campaign donor to Sacramento lawmakers." The complaint alleged that Sen. Bill 841 was passed by the Legislature and signed into law by Governor Davis after Mercury "poured approximately $340,000 into political contributions to lawmakers statewide since the [Governor's] veto of [Sen. Bill] 689 the year before, and an additional $175,000 into [the] Governor's anti-recall campaign after he signed [Sen. Bill] 841 [into law]." (Fn. omitted.) Petitioners alleged Mercury had contributed a total of $895,100 to California lawmakers during this period. Petitioners further alleged that Mercury had decided to sponsor Sen. Bill 689 and Sen. Bill 841 after the Insurance Commissioner issued a regulation limiting persistency discounts.

On October 10, 2003, petitioners filed a motion for an order directing the issuance of a peremptory writ of mandate and set the matter under regular notice for hearing on March 1, 2004. Petitioners then made an ex parte application for an order advancing the hearing date before Superior Court Judge Dzintra I. Janavs, who was assigned the case.[3]

---

[3] As reason for advancing the hearing date, petitioners informed the court their action raised a serious question of statewide importance regarding the constitutional validity of Sen. Bill 841 and time was of the essence in resolving the issue: "[Sen. Bill] 841 was signed by Governor Davis on August 2[, 2003] as a purported 'urgency measure' and thus became effective immediately, rather than on January 1, 2004. As a consequence of the immediate effectiveness of the legislation, hundreds of insurers in California are expected to soon file new 'class plans'

On October 15, 2003, Judge Janavs advanced the hearing of petitioners' motion for peremptory writ of mandate to November 25, 2003, and established an expedited briefing schedule.

### B. *Mercury's Insertion in the Action as Intervener*

On October 23, 2003, after learning of petitioners' complaint, Mercury filed a request for special notice, in which it stated it intended to intervene in the action. The following day, petitioners' counsel offered to stipulate to Mercury's intervention so long as Mercury did not expand the scope of the issues or delay the briefing and hearing schedule previously set by the court. Mercury rejected petitioners' offered stipulation, asserting it was unreasonable to expect Mercury to file an opposition to petitioners' pending motion for writ of mandate in the time available.

Mercury then filed two ex parte applications with the trial court: an application seeking leave to intervene in the case and an application for an order shortening notice time to bring a special motion to strike under the anti-SLAPP statute. (Code Civ. Proc., § 425.16.)[4] Mercury proposed to combine its anti-SLAPP motion with a conventional motion to strike those portions of the complaint mentioning Mercury. (§§ 435, 436.) Among other things, Mercury claimed it would suffer the immediate harm of not being able to strike "unfounded bribery allegations" in the complaint if it were not allowed to intervene.

On October 29, 2003, Mercury presented its ex parte applications to Superior Court Judge David P. Yaffe because Judge Janavs was unavailable. Judge Yaffe denied Mercury's ex parte application to intervene on the ground that Mercury was attempting to enlarge the issues.

As a result, Mercury filed a petition for peremptory writ of mandate in this court on November 4, 2003, to set aside Judge Yaffe's order denying Mercury leave to intervene.

---

with the Department of Insurance seeking the Department's approval to use the new rating factor created by [Sen. Bill] 841. These class plans, in turn, would change rates and premiums for drivers across California. All of these changes could well be concluded before any hearing even began on the first date currently assigned to [p]etitioners' motion for writ of mandate, March 1, 2004."

[4] All statutory references are to the Code of Civil Procedure unless otherwise indicated. Subdivision (b)(1) of section 425.16 provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

On November 20, 2003, we issued a notice of intention to grant a peremptory writ of mandate in the first instance. (*Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893].) In issuing the *Palma* notice, we observed that Judge Yaffe had two concerns in denying Mercury leave to intervene. First, the judge was concerned that the briefing schedule and hearing on petitioners' motion for a peremptory writ of mandate would be delayed if Mercury was granted leave to intervene. We noted, however, that Mercury had not asked Judge Yaffe to extend any dates and Mercury's counsel had indicated he was prepared to meet the existing deadline.[5] Second, Judge Yaffe was concerned that Mercury would try to expand the issues in the case by filing its special motion to strike. We observed, however, that "if [Mercury] is entitled to file such a motion, it is improper to deny intervention solely because of a desire to prevent the filing of such a motion." We also noted that Mercury's counsel had stipulated on the record that Mercury would not appeal if its special motion to strike were denied.[6]

Accordingly, our *Palma* notice expressed our intention to issue a peremptory writ to require the trial court to vacate its order denying Mercury's ex parte application for leave to intervene and to thereafter enter a new and different order granting the application. We also ordered the hearing on petitioners' motion for a peremptory writ of mandate stayed until either (1) the trial court granted Mercury leave to intervene and set a new hearing date and afforded Mercury an opportunity to file "any pleadings it is entitled to file" in response to the complaint before the hearing takes place, or (2) the further order of this court.

In the interim, on October 31, 2003, Mercury had filed in the trial court a noticed motion for leave to intervene and a notice of a consolidated special motion to strike and ordinary motion to strike petitioners' complaint. Mercury's combined motion to strike was contingent upon Mercury being granted leave to intervene. Mercury set both of those motions for hearing on November 21, 2003, but Judge Janavs had no opportunity to rule on the motions at that time because of our intervening stay order. Petitioners informed Judge Janavs of

---

[5] We stated that Mercury's counsel had merely wanted to reserve the right to ask Judge Janavs, the judge who had fixed the briefing schedule and before whom the hearing was to take place, for additional time. We noted Judge Janavs was free to exercise her discretion and, if appropriate, deny a request for additional time.

[6] In seeking writ review, Mercury expressly informed this court that, if allowed to intervene, it would not appeal the denial of its anti-SLAPP motion. Mercury stated it "continues to be willing to waive its immediate right of appeal of its [s]pecial [m]otion to [s]trike, assuming it is denied, because it has a strong interest in the swift resolution of the constitutional issues raised by the Petition/Complaint below."

our action and advised her that, although they did not agree with this court's tentative conclusions, they had informed Mercury's counsel they were willing to stipulate to Mercury's intervening in the case so as not to delay a hearing and conclusion on the merits.

Accordingly, on November 24, 2003, petitioners submitted an ex parte application to Judge Janavs, asking for an order confirming their stipulation to allow Mercury to intervene. Petitioners asked Judge Janavs to reset the briefing and hearing schedule for their petition for peremptory writ of mandate. Confirming petitioners' stipulation, Judge Janavs granted Mercury leave to intervene and deemed Mercury's combined special motion to strike and ordinary motion to strike filed as of November 24, 2003. Judge Janavs deemed all the material allegations of Mercury's complaint in intervention to be denied by petitioners and the Insurance Commissioner.

Judge Janavs set a new briefing schedule and set Mercury's anti-SLAPP motion and alternative motion to strike for hearing at the same date and time as petitioners' motion for peremptory writ of mandate on the substantive merits of the underlying action.[7]

We thereafter dismissed Mercury's petition for writ of mandate before us as moot.

C. *Mercury's Special Motion to Strike and Court's Finding Motion Frivolous*

After extensive hearings on January 13 and 15, 2004, the trial court granted petitioners' motion for peremptory writ of mandate and entered a judgment in favor of petitioners.

The trial court granted Mercury's ordinary motion to strike the references to Mercury from the complaint, finding them irrelevant and immaterial.

---

[7] In the course of the discussion before the court, petitioners' counsel asked for a clarification of Mercury's waiver of an appeal from any denial of the anti-SLAPP motion, as follows:

"[Petitioners' Counsel]: One other question I want to ask: I read the Court of Appeal's order. The court seemed to assume that . . . Mercury's stipulation was not to appeal the denial of the [anti-]SLAPP motion. Is that still operative?

"The Court: That was my understanding of the Court of Appeal's statement.

"[Mercury's Counsel]: That's correct, and they said it several times.

"[Petitioners' Counsel]: Very good. Thank you. [¶] . . . [¶]

"[Mercury's Counsel]: But . . . we do preserve any remedies and expect to remain on . . . the conventional motion to strike."

(§§ 435, 436.) The court denied, however, Mercury's anti-SLAPP motion and found the motion "frivolous."

In so ruling, the court adopted the reasoning set forth in its tentative decision. In the tentative decision provided the parties prior to argument, the trial court listed a number of grounds upon which it denied Mercury's special motion to strike.

First, the court ruled petitioners' action was exempt from Mercury's anti-SLAPP motion under section 425.17, subdivision (b), for the reasons stated in petitioners' opposition.[8]

The court further ruled that even if section 425.17 did not exempt the action from an anti-SLAPP motion, under section 425.16, subdivision (b)(1), the initial burden is on the defendant to show that a claim arises out of the defendant's actions in furtherance of the right of petition or free speech. Once the defendant makes such a showing, the burden then switches to the plaintiff to establish the probability of success on the merits. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 [124 Cal.Rptr.2d 530, 52 P.3d 703].) The court found Mercury failed to carry this burden.

The court additionally ruled that Mercury lacked standing to bring an anti-SLAPP motion: petitioners had not sued Mercury and the petition did not allege any cause of action against Mercury, as required under the "plain language" of section 425.16, subdivision (b)(1). The court determined that petitioners' claims did not "arise from" Mercury's campaign contributions; petitioners' action did not challenge Mercury's political contributions but rather the constitutionality of Sen. Bill 841. The court noted: " 'That a cause of action arguably may have been triggered by protected activity does not entail that it is one arising from' that activity. *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 [124 Cal.Rptr.2d 519, 52 P.3d 695]."

Citing *Navellier v. Sletten*, the court further ruled that, even if an anti-SLAPP motion was appropriate here, petitioners' claims more than met

---

[8] Section 425.17, subdivision (b) provides that section 425.16 does not apply "to any action brought solely in the public interest or on behalf of the general public if all of the following conditions exist: [¶] (1) The plaintiff does not seek any relief greater than or different from the relief sought for the general public or a class of which the plaintiff is a member. . . . [¶] (2) The action, if successful, would enforce an important right affecting the public interest, and would confer a significant benefit, whether pecuniary or nonpecuniary, on the general public or a large class of persons. [¶] (3) Private enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter."

the "minimal merit" standard required for them to proceed with the action. (*Navellier v. Sletten, supra,* 29 Cal.4th at p. 88.)[9]

Having found no basis for the anti-SLAPP motion, the court ruled that Mercury's anti-SLAPP motion was frivolous under the facts and circumstances.

## D. *Award of Attorney Fees and Costs*

On January 13, 2004, the court entered an order indicating it would award fees and costs if an appropriate motion was set. A judgment issued on February 20, 2004, that provided petitioners were awarded costs and that "[a]ny requests for attorney fees shall be presented by appropriate motion."

On March 16, 2004, Mercury appealed from the judgment and "all other separately appealable orders in this action."

Petitioners subsequently filed a motion for attorney fees and costs in the total amount of $157,348.66 under section 425.16, subdivision (c).[10] Petitioners claimed they incurred $38,799.00 in opposing Mercury's special motion to strike and requested that the court apply a multiplier of 1.5 to this amount. Petitioners also requested fees of $97,095.75 and costs of $2,054.41 in bringing their motion for costs and attorney fees.

Mercury opposed petitioners' anti-SLAPP fee motion by suggesting that the court apply a "rule of thumb": law and motion work should be compensated at the flat rate of $150 per page. Mercury argued a second year associate, billing at a "current market" rate of $300 per hour, should produce two pages per hour and therefore could have produced the 15-page response to Mercury's motion to strike in seven and a half hours, at a maximum cost of $2,250.00.

The trial court provided the parties with a seven-page, single-spaced tentative decision on petitioners' claim for attorney fees and costs at the

---

[9] As noted, the trial court found for petitioners on the underlying merits, and we affirm the court's judgment in the companion appeal.

[10] Section 425.16, subdivision (c) provides in pertinent part: "In any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs. If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to [s]ection 128.5." Section 128.5 allows, in subdivision (a), the award against any party or the party's attorney of "any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay" and requires, in subdivision (c), that "[a]n order imposing expenses shall be in writing and shall recite in detail the conduct or circumstances justifying the order."

hearing of the fee motion. In its tentative decision, the court found petitioners entitled to an award of $69,655.00 in attorney fees and $774.04 in attorney expenses, or a total of $70,429.04 in reasonable attorney fees and costs under section 425.16, subdivision (c), and section 128.5.

The court rejected Mercury's contention that the fees for the ordinary motion to strike should be segregated from the claimed fees; because Mercury had chosen to file a combined special motion to strike with an ordinary motion to strike, the court found that petitioners properly filed a combined opposition in response to the combined motion. In any case, the court reasoned, petitioners had stated they included only SLAPP-related fees in their motion, and only one page of petitioners' opposition had addressed the ordinary motion to strike. The court found petitioners had "clearly spent most of their time and efforts defeating the [anti-]SLAPP motion, rather than the [ordinary] motion to strike."

The court rejected Mercury's "rule of thumb" method of calculating "reasonable" attorney fees at the flat rate of $150 per page. The court's tentative ruling instead examined the hourly rates charged by each of petitioners' attorneys and adjusted them in light of market rates and the individual attorney's skill, knowledge and experience. The court also scrutinized the billing entries and hours incurred by each attorney in relation to the product generated, the complexity or novelty of the issues and the tasks performed in relation to the special motion to strike.[11] Taking these factors into consideration, the court reduced the SLAPP fees claimed, allocating fees to individual attorneys (measured by the attorney's reasonable hourly rate multiplied by hours reasonably incurred),[12] and concluded the reasonable fees for opposing the SLAPP motion amounted to $26,105.

The court determined an enhancement of such fees was not appropriate, considering: "(1) the novelty and difficulty of the questions involved, (2) the

---

[11] At the hearing on the fee motion, the court explained: "I read every entry in the supporting documentation, and I have looked at every entry here to see exactly how people bill, what they bill for and so on. I read the declarations. I read all the other papers. I look at the total hours. I look at the files myself and what I myself have had to go through in terms of review and what it takes. [¶] And then I convert the total hours in days and weeks and months and . . . I like to . . . convert it to . . . see what it is we're talking about. And I did it in this case." In ruling, the court stated, "I have considered very carefully all of the papers that have been submitted. In estimating the hours as between lawyers I looked at both the amount of work that particular group of lawyers did on the merits as well as what they did on the fee motion and what each was responsible for."

[12] The court noted that "there are extensive hours of reviewing, outlining, drafting, re-drafting, editing and re-editing, and circulating the drafts between multiple attorneys. Considerable time is billed to strategizing and various other communications. Although drafting, editing, and coordinating are necessarily involved in a [c]ase such as this, the court finds that the total time here spent on such activities is not reasonable."

skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132 [104 Cal.Rptr.2d 377, 17 P.3d 735].)

With respect to petitioners' claim for fees incurred in making their fee motion, the court determined that the approximately $98,000 petitioners sought was "clearly excessive." The court indicated it had already ruled that Mercury's anti-SLAPP motion was frivolous, and no extensive research or analysis was required to bring the fee motion. Based on its review of the work performed, the court reduced petitioners' award in connection with the fee motion to $43,500.[13]

The court declined to apply any multiplier to the claimed fees, finding petitioners had not made a sufficient showing that application of a multiplier was justified in this case. The court further reduced the claimed attorney costs from $2,054.41 to $774.04, disallowing costs for airfare, meals and lodging.

After hearing argument, the court adopted its tentative decision as its order. The court cut approximately 30 percent of the hours claimed by petitioners' counsel to oppose the anti-SLAPP motion, while disallowing approximately 50 percent of the hours incurred in litigating the fee motion itself.

Mercury timely appealed from the order awarding petitioners attorney fees and costs.

## DISCUSSION

On appeal, Mercury challenges the trial court's award of attorney fees and the "finding of frivolity upon which that award was based."

■ The anti-SLAPP statute allows a trial court to award attorney fees against a party who, in its discretion, files a frivolous motion to dismiss. (§ 425.16, subd. (c); *Visher v. City of Malibu* (2005) 126 Cal.App.4th 364, 371 [23 Cal.Rptr.3d 816].) Section 425.16, subdivision (c), provides that "[i]f the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court *shall* award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section

---

[13] As with the attorney fee award for opposing the anti-SLAPP motion, the court multiplied the reasonable hourly rate of each attorney by the number of hours it found reasonably incurred by the attorney in pursuing the fee motion in order to arrive at a reasonable fee for each attorney.

128.5." The imposition of sanctions for a frivolous anti-SLAPP motion is therefore mandatory. (*Moore v. Shaw* (2004) 116 Cal.App.4th 182, 199 [10 Cal.Rptr.3d 154].)

■ "A determination of frivolousness requires a finding the motion is 'totally and completely without merit' (§ 128.5, subd. (b)(2)), that is, 'any reasonable attorney would agree such motion is totally devoid of merit.' [Citation.]" (*Decker v. U.D. Registry, Inc.* (2003) 105 Cal.App.4th 1382, 1392 [129 Cal.Rptr.2d 892] (*Decker*).)

■ We review an award for attorney fees and costs for abuse of discretion. (*Visher v. City of Malibu, supra,* 126 Cal.App.4th at p. 368; *Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1248 [132 Cal.Rptr.2d 57].) ■ " '[T]he appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.' " (*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 785 [54 Cal.Rptr.2d 830], quoting *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478 [243 Cal.Rptr. 902, 749 P.2d 339].)

A. *The Trial Court Did Not Abuse Its Discretion in Ruling the Anti-SLAPP Motion Was Frivolous*

Mercury contends the order awarding attorney fees should be vacated because the trial court did not set forth the justification for its finding of frivolousness, nor is such a finding supported by the record. We disagree.

1. *The Trial Court's Order Was Sufficient*

■ Attorney fees under section 425.16 are awarded "pursuant to [s]ection 128.5." (§ 425.16, subd. (c).) Under section 128.5, "[a]n order imposing expenses shall be in writing and shall recite in detail the conduct or circumstances justifying the order." (§ 128.5, subd. (c).) Substantively, section 128.5 does not replace section 425.16. The import of section 425.16 is that "a court must use the procedures and apply the substantive standards of section 128.5 in deciding whether to award attorney fees under the anti-SLAPP statute." (*Decker, supra,* 105 Cal.App.4th at p. 1392.) In *Decker*, the appellate court found insufficient an order that declared, without more, that defendant's anti-SLAPP motions were "frivolous." *Decker* observed that a "court's written order 'should be more informative than a mere recitation of the words of the statute.' " (*Ibid.*) The conduct or circumstances justifying the imposition of sanctions may be satisfied by incorporating by reference "papers setting forth the conduct, circumstances, and legal arguments underlying the court's conclusions." (*Childs v. PaineWebber Incorporated* (1994) 29 Cal.App.4th 982, 997 [35 Cal.Rptr.2d 93].)

The court here did more than perfunctorily recite that Mercury's anti-SLAPP motion was frivolous. The court drafted a tentative decision explaining the court's tentative ruling and its reasoning to the parties prior to argument, allowed the parties to argue the issues and then adopted its tentative decision after argument. The tentative decision also incorporated the authorities and argument set forth in petitioners' opposition to the anti-SLAPP motion.

■ To justify a sanctions award, "no more is required than a written factual recital, with reasonable specificity, of the circumstances that led the trial court to find the conduct before it sanctionable under the relevant code section." (*Childs v. PaineWebber Incorporated, supra,* 29 Cal.App.4th at p. 996.) In denying Mercury's anti-SLAPP motion, the court further incorporated petitioners' opposition to the motion, which also was sufficient to set forth the "conduct, circumstances, and legal arguments" underlying the court's conclusions. (*Id.* at pp. 996–997.)

### 2. *There Was No Reasonable Basis for Mercury's Anti-SLAPP Motion*

■ Under *Navellier v. Sletten,* the party bringing the anti-SLAPP motion must first demonstrate that the challenged cause of action is one arising from protected activity; once the moving party makes such a showing, the plaintiff must demonstrate a probability of prevailing on the claim. (*Navellier v. Sletten, supra,* 29 Cal.4th at p. 88.) Only a cause of action that both arises from protected speech or petitioning *and* lacks even minimal merit is a SLAPP subject to the special motion to strike. (*Id.* at p. 89.)

As the court determined, the complaint in this case was not a SLAPP. Mercury brought the anti-SLAPP motion even though the complaint was exempt under the "public interest" exception of section 425.17. Mercury also failed to carry its burden of proof of showing petitioners' claim arose from Mercury's actions in furtherance of its right of petition or free speech. Further, Mercury brought its motion even though petitioners' complaint contained no cause of action against Mercury and did not challenge Mercury's campaign contributions, i.e., its supposed "political speech." Moreover, petitioners demonstrated the probability of prevailing on their claim under the standards of *Navellier.* (*Navellier v. Sletten, supra,* 29 Cal.4th at p. 88.) After making these determinations, the court ruled Mercury's anti-SLAPP motion frivolous, "given the facts and circumstances."

Mercury contends that the order awarding attorney fees and costs should be vacated because, even though unsuccessful, Mercury's special motion to strike was not frivolous. We have reviewed Mercury's arguments and are satisfied the

trial court did not err in finding Mercury's anti-SLAPP motion frivolous, as we find that Mercury unreasonably and unnecessarily employed the anti-SLAPP motion to challenge petitioners' complaint. (*Visher v. City of Malibu, supra,* 126 Cal.App.4th at p. 371.)

■ It was clear this case was "brought solely in the public interest or on behalf of the general public" and that petitioners otherwise satisfied the requirements of subdivision (b) of section 425.17. Mercury claims an action "defaming" Mercury is not "brought . . . solely in the public interest." As we discuss, *post,* the complaint did not defame Mercury. In any case, an action that satisfies the conditions set forth in subdivision (b) does not lose its exemption solely because it might contain extraneous allegations not essential to a cause of action.

Mercury contends that, even though no case had held it *could* bring an anti-SLAPP motion under section 425.17 at the time of its motion, no case had held it *could not* do so. Section 425.17, effective January 1, 2004, was added by the Legislature in 2003. (Stats. 2003, ch. 338, § 1.) Although section 425.17 was not in effect on November 24, 2003, the date that Mercury's anti-SLAPP motion was deemed filed, the legislation had been signed into law on September 6, 2003. Petitioners' opposition specifically drew Mercury's attention to the passage of section 425.17, showed its applicability to the present action and attached a copy of the statute. There is no doubt that Mercury was aware of the new legislation.

■ Mercury could not reasonably believe section 425.17 did not apply to petitioners' complaint. Existing law established that section 425.16 merely provided a procedural screening device for determining whether a plaintiff can show sufficient facts to allow a matter to go to a trier of fact. As such, it was clear section 425.16 could be invoked to strike a lawsuit filed before the effective date of the statute. (*Robertson v. Rodriguez* (1995) 36 Cal.App.4th 347, 356–357 [42 Cal.Rptr.2d 464].) The passage of section 425.17 merely created an exception for certain claims from section 425.16's application. Section 425.17 imposed no new, additional or different liability based on past conduct, nor deprived a defendant of any substantive defense to an action. (*Brenton v. Metabolife Internat., Inc.* (2004) 116 Cal.App.4th 679, 689–690 [10 Cal.Rptr.3d 702].) Section 425.17, therefore, like section 425.16, was "properly characterized as a procedural statute applicable to pending actions." (*Brenton v. Metabolife Internat., Inc.,* at p. 689; see also *Blanchard v. DIRECTV, Inc.* (2004) 123 Cal.App.4th 903, 912, fn. 5 [20 Cal.Rptr.3d 385].) Because existing law already characterized section 425.16 as a procedural

statute applicable to cases pending upon its effective date, Mercury could not have reasonably believed section 425.17 would be viewed any differently. By filing its anti-SLAPP motion in face of newly enacted section 425.17, Mercury took the very real risk that its motion would be deemed frivolous.

Not surprisingly, numerous cases have since applied section 425.17's provisions to pending cases, including those in which orders already had been entered and on appeal before the statute's effective date. (*Northern Cal. Carpenters Regional Council v. Warmington Hercules Assocs.* (2004) 124 Cal.App.4th 296, 301–302 [20 Cal.Rptr.3d 918] [public interest exception applied to motion filed before statute became effective]; *Blanchard v. DIRECTV, Inc., supra*, 123 Cal.App.4th at p. 912, fn. 5 [public interest exception applied to order entered after effective date, but action did not fall within exception]; *Brenton v. Metabolife Internat., Inc., supra*, 116 Cal.App.4th at pp. 687, 689–691 [commercial speech exception applied to claim arising from conduct occurring before statute's effective date]; *Metcalf v. U-Haul International, Inc.* (2004) 118 Cal.App.4th 1261, 1266 [13 Cal.Rptr.3d 686] [applying commercial speech exception to case already on appeal on effective date]; *Physicians Com. for Responsible Medicine v. Tyson Foods, Inc.* (2004) 119 Cal.App.4th 120, 128–129 [13 Cal.Rptr.3d 926] [same].) Accordingly, it did not matter that Mercury brought its anti-SLAPP motion before the effective date of section 425.17 since that statute applied to all cases still pending on that date. A reasonable attorney would not agree the anti-SLAPP motion had merit in face of section 425.17.

 We also are not persuaded that the action falls within an "exception to the exception" contained in subdivision (d)(2) of section 425.17, as Mercury claims. Mercury states subdivision (d)(2) "expressly exempts certain types of speech from its scope, including 'dramatic, literary, musical, political or artistic work. . . .' " This is an incomplete quotation of the statute, which exempts: "Any *action* against any person or entity based upon *the creation, dissemination, exhibition, advertisement, or other similar promotion* of any *dramatic, literary, musical, political, or artistic work,* including, but not limited to, *a motion picture or television program, or an article* published in a newspaper or magazine of general circulation." (§ 425.17, subd. (d)(2), italics added.) The statute is limited to lawsuits "against" a person based upon the "creation" or "promotion" of "work" such as "a motion picture or television program, or an article published in a newspaper or magazine of general circulation," i.e., work of a kind that might be subject to copyright protection. Mercury asserts the protected conduct at issue here is "political speech" and equates a "political contribution" to "political work." Even if such an argument were remotely plausible, we need not address it since there

was no reasonable basis for Mercury to conclude a lawsuit was brought against it.

Section 425.16 provides a remedy with respect to "[a] cause of action *against* a person *arising from* any act of that person in furtherance of a person's right of petition or free speech . . . ." (§ 425.16, subd. (b)(1), italics added.) Petitioners did not name Mercury as a defendant in the complaint, nor did they seek any relief against Mercury in the complaint. Therefore, Mercury did not satisfy the requirement of showing the action was brought against it.

■ We reject Mercury's claim that its status as an intervener on the side of the defense placed it in the shoes of a defendant and as such gave it the same right to bring an anti-SLAPP motion as a defendant. The complaint in intervention did not transform Mercury into a defendant. Quoting Pomeroy on Remedies and Remedial Rights, our Supreme Court long ago explained the status of an intervener as follows: " 'The proceeding by intervention is not an anomalous one, differing from other judicial controversies, after it had been once commenced. It is, in fact, the grafting of one action upon another, and the trying of the combined issues at one trial, and the determining them by one judgment. * * * The intervenor brings *himself* into Court and becomes a litigant party, by filing and serving his petition, which is answered by the adversary parties—plaintiff or defendant, or both—in the same manner as though it was the pleading of the plaintiff; the issues are then framed—issues upon the plaintiff's petition and the intervenor's petition—and the trial of the whole is had at one hearing. *If the intervenor fails* on the trial, a judgment for costs is of course rendered against him; if he succeeds, judgment is given in his favor, according to the facts and circumstances of the case.' " (*Sheldon v. Gunn* (1880) 56 Cal. 582, 587, italics added.) The Supreme Court reversed a judgment for plaintiffs against the interveners because the interveners had voluntarily dismissed their complaint in intervention and thus "were out of the case by virtue of the order of dismissal." (*Id.* at p. 588.) Because an intervener is akin to a plaintiff, Mercury did not become a person against whom a cause of action was asserted simply by filing a complaint in intervention against petitioners. Mercury thus could not intervene to make itself a self-styled "defendant" for purposes of an anti-SLAPP motion when it was not a defendant to the complaint and the complaint did not purport to assert any claim against it.[14]

---

[14] The trial court acknowledged this procedural posture by deeming the material allegations of the complaint in intervention to be denied by petitioners and by the Insurance Commissioner, who had aligned himself with petitioners. Had Mercury become a "defendant" upon filing its complaint in intervention, there would have been no need to answer the complaint in intervention. Moreover, as previously discussed, even the defendants had no reasonable basis for filing an anti-SLAPP motion in face of newly enacted section 425.17.

█ Mercury also did not meet its burden of showing the action is one "arising from" protected activity. Petitioners' complaint challenged the act of the Legislature in passing Sen. Bill 841. The complaint did not challenge Mercury's acts of making campaign contributions or sponsoring legislation but the constitutionality of the legislation that issued from that process. The phrase "arising from" in section 425.16 should not be interpreted as meaning " 'in response to.' " (*Santa Monica Rent Control Bd. v. Pearl Street, LLC* (2003) 109 Cal.App.4th 1308, 1318 [135 Cal.Rptr.2d 903].) "[T]he mere fact an action was filed *after* protected activity took place does not mean it *arose from* that activity." (*City of Cotati v. Cashman, supra*, 29 Cal.4th 69, 76–77, italics added.) Furthermore, "[t]hat a cause of action arguably may have been triggered by protected activity does not entail that it is one arising from such." (*Id.* at p. 78.)

█ Moreover, "[i]n the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." (*City of Cotati v. Cashman, supra*, 29 Cal.4th at p. 78.) Petitioners' complaint was not "based on" Mercury's actions but targeted the constitutionality of the legislation allegedly facilitated by those actions.

Mercury also argues that the complaint charged Mercury with "bribery," justifying the anti-SLAPP motion. We do not agree. Nowhere in the complaint does the word "bribery" appear, nor did petitioners allege that Mercury engaged in bribery. Petitioners did allege that Mercury had: contributed "campaign cash" in the period surrounding the introduction of Sen. Bill 689; "infus[ed]" political contributions and was a "major campaign donor" to Sacramento lawmakers; "poured" substantial funds into political contributions to lawmakers and into Governor Davis's campaign after his veto of Sen. Bill 689; and "decided to change the statute itself" by sponsoring Sen. Bill 689 and Sen. Bill 841. Although such allegations indicate Mercury at most may have actively participated in the political process, they do not amount to a charge of unlawful "bribery."

In any case, Mercury admitted in the trial court that "[t]he contributions listed . . . are not atypical of Mercury's political donations pattern over the last five years," i.e., that the allegations of the complaint were accurate, but claimed they were irrelevant and immaterial. The court agreed with Mercury and granted Mercury's ordinary motion to strike such allegations. Since those allegations were subject to an ordinary motion to strike, there was no call for Mercury to file an anti-SLAPP motion to remove those allegations from the

complaint. Indeed, in its reply brief, Mercury admits that it "did not need to file an anti-SLAPP motion to cleanse [the] [p]etition" of such allegations.

The trial court found Mercury's anti-SLAPP motion to be frivolous, and, upon this record, we find no abuse of discretion in that decision. (*Visher v. City of Malibu, supra,* 126 Cal.App.4th at p. 371.)

### B. *The Amount of Fees Awarded Was Not an Abuse of Discretion*

The court awarded petitioners $70,429.04 in attorney fees and costs upon a fully documented "lodestar" figure of $135,894.75. Mercury argues the amount of fees the trial court awarded was "grossly disproportionate" with the size and complexity of the underlying opposition and the fee motion itself. We disagree, and find no abuse of discretion in the court's award.

 The amount of attorney fees to be awarded is within the trial court's sound discretion. (*Padilla v. McClellan* (2001) 93 Cal.App.4th 1100, 1107 [113 Cal.Rptr.2d 680]; *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 [95 Cal.Rptr.2d 198, 997 P.2d 511].) The experienced trial judge is the best judge of the value of professional services rendered in his or her court, and a reviewing court will not disturb a trial court's award unless it is convinced that the trial court's award is clearly wrong. (*PLCM Group, Inc. v. Drexler,* at p. 1095.)

The trial judge here reviewed detailed contemporaneous time records that petitioners' counsel submitted, as well as the declarations of counsel describing each attorney's experience and background. The judge stressed that she "considered very carefully all of the papers that ha[d] been submitted." The judge did not simply accept the billing rates and hours claimed by petitioners' attorneys. She scrutinized each entry and assessed the hours claimed against the work performed and significantly cut the lodestar amounts claimed. The trial judge also "considered all of the files" in light of her familiarity with the underlying case and her own efforts in reviewing files. In estimating the hours she took into account the areas of responsibilities assumed by the various lawyers and the amount of work undertaken on the merits as well as with respect to the fee motion. (*Ketchum v. Moses, supra,* 24 Cal.4th at p. 1132.)

Although the sums awarded are generous, we cannot say the trial judge exceeded the bounds of discretion in her award of attorney fees and costs. (*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman, supra,* 47 Cal.App.4th at p. 785.)

## DISPOSITION

The judgment is affirmed. Petitioners shall recover their costs and attorney fees on appeal, the amount of which shall be determined upon proper application to the trial court. (*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman, supra,* 47 Cal.App.4th at p. 785; *Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1500 [45 Cal.Rptr.2d 624].)

Cooper, P. J., and Rubin, J., concurred.