Filed 10/31/14  Certified for Publication 11/24/14 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ADI BEN-SHAHAR, | B250728, B251417 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC502792) |
| v. | |
| DANIEL PICKART et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Richard L. Fruin, Jr., Judge.  Affirmed in part and reversed in part.

Lewis Brisbois Bisgaard & Smith, David B. Shapiro, Lynda J. Kim, David D. Samani and Roy G. Weatherup for Defendants and Appellants.

Ballard Spahr, Peter Haviland, Daniel M. Benjamin and Ethan Chernin for Plaintiff and Respondent.

_____

Defendants Daniel Pickart, Stephanie Pickart, Savoy Bellavia, Annamarie Bellavia, John Acierno, and Luanne Acierno appeal the denial of their Code of Civil Procedure section 426.16[1] special motion to strike plaintiff's first amended complaint. Plaintiff Adi Ben-Shahar cross-appeals the trial court's denial of his request for attorney fees in defending the motion. We affirm the denial of defendants' motion to strike, and reverse the denial of attorney fees and remand to the trial court for further proceedings on attorney fees.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

*1. Plaintiff's Occupancy and the Gilliland Agreement*

Plaintiff occupied a rent-controlled penthouse apartment located at 202 Bicknell Street in Santa Monica. The apartment is in a three-story brick unreinforced masonry building that was built in 1912. Plaintiff has resided in the apartment since 1989, and is a licensed electrical contractor. Plaintiff spent about $70,000 to remodel his apartment based upon representations from Geraldine Gilliland,[2] the owner of the building, that she would not sell the building and that plaintiff would be reimbursed for all costs he expended on the remodeling. Later, plaintiff negotiated an agreement with Gilliland memorialized in a letter dated November 29, 2011 in which Gilliland stated that she would pay $212,000 to plaintiff for the work he had performed. The agreement also provided that plaintiff would move out of the unit and Gilliland would pay plaintiff a relocation fee.

*2. Defendants' Purchase of the Building and the Unlawful Detainer Proceedings*

In March 2012, defendants[3] purchased the building and defendant Daniel Pickart served plaintiff with a 60-day notice to quit. The Santa Monica Rent Control Ordinance (SMRCO), section 1806, permits a building owner to displace a tenant, but the owner must

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] Gilliland is a defendant in this action but not a party to this appeal.

[3] Daniel Pickart and Stephanie Pickart own a 50 percent interest in the building; Savoy Bellavia and Annmarie Belavia, trustees of the S&A Belavia Trust, own a 25 percent interest; and John Acierno and Luanne Acierno, trustees of the Acierno Family Trust, own the remaining 25 percent.

2

occupy the unit with 30 days after the tenant vacates. If the owner does not occupy the unit within this time frame, the owner must offer the unit to the displaced tenant.[4]

After plaintiff told Pickart that he would not vacate the apartment, Pickart initiated unlawful detainer proceedings.[5] At the trial of the unlawful detainer action, Pickart informed the court he intended to move into the unit with his family. In opposition, plaintiff presented evidence to show that Pickart's goal was to raise rents by pushing out the rent-controlled tenants. In July 2012, the court issued a ruling requiring plaintiff to vacate the unit and finding that the Pickarts had acted in good faith, and the Pickarts intended to move into the unit. The court further found plaintiff's defense of the action was not frivolous.

The same day, the parties entered into an agreement resolving the unlawful detainer proceedings pursuant to which plaintiff would vacate the premises and the Pickarts would comply with the provisions of the SMRCO, section 1806, subdivision (a)(8)(iv). Plaintiff vacated the unit on August 31, 2012.

However, defendants did not occupy the unit within this time period although they intended to do so because extensive renovations of the property were necessary. An inspection of the premises disclosed rotten wood in the building and that some seismic anchors were present on the building, but without destructive testing the presence of the

---

[4] Section 1806 of the SMRCO provides in relevant part: "(a) No landlord shall take action to terminate any tenancy including but not limited to, to making a demand for possession of a rental unit, threatening to terminate a tenancy, serving any notice to quit or other eviction notice or bringing any action to recover possession or be granted recovery of possession of a controlled rental unit except: [¶] . . . [¶] (8) The landlord seeks to recover possession in good faith for use and occupancy by herself or himself, or her or his children, parents, grandparents, brother, sister, father-in-law, mother-in-law, son-in-law, or daughter-in-law; [¶] . . . [¶] (iv) The landlord or enumerated relative must intend in good faith to move into the unit within thirty (30) days after the tenant vacates and to occupy the unit as a primary residence for at least one year. The Board may adopt regulations governing the determination of good faith."

[5] The unlawful detainer proceedings were prosecuted in two separate actions: one pertained to the apartment, and the other pertained to a garage/office that plaintiff also rented.

remaining anchors could not be determined. Such testing disclosed the anchors were missing. An architect retained by the Pickarts drew up extensive plans for the property, and estimated that the work would take six months, not including the time required to obtain permits. The required permits were obtained in August 2012. In September 2012, defendants began demolishing the apartment, but several days later the City issued a stop order because the required permits had not been issued. The City kept finding new issues to be resolved before construction could proceed. After revisions were made to the plans, the required permits were issued and construction continued in October through November 2012.

Based on the delays in construction, on November 5, 2012, plaintiff moved for a finding that defendants had breached the unlawful detainer settlement because even if the Pickarts had moved into the premises, they had moved out during September 2012, and were thus required to offer the premises to plaintiff pursuant to SMRCO section 1806, subdivision (a)(8)(iv).

On January 23, 2013, proceedings were held in the unlawful detainer proceedings concerning defendants' alleged breach of the unlawful detainer settlement. The court indicated that it could only undertake consideration of the merits if the case were reclassified from limited to unlimited, and noted that a separate lawsuit was the appropriate way for plaintiff to assert his claims. The court did not rule on the motion.

*3.      Plaintiff's Complaint and Defendants' Motion to Strike*

Plaintiff filed this action on March 12, 2013, and his operative first amended complaint stated claims for violations of the SMRCO, breach of the unlawful detainer settlement agreement, violation of the UCL, breach of the Gilliland relocation agreement, and unjust enrichment. Plaintiff sought an order restoring him to his apartment, restitution, damages, and attorney fees.

Defendants filed a special motion to strike, asserting that their conduct was protected litigation activity because it was based on Pickart's actions as landlord in serving a notice to quit, resolution of the unlawful detainer action, and enforcement of the settlement agreements. Further, plaintiff's claims were without merit because the court in the unlawful detainer

4

proceedings had found in favor of defendants, thus collaterally estopping plaintiff from asserting any claims based upon his eviction or the Pickarts' failure to occupy the premises within 30 days.

Plaintiff's opposition asserted that his lawsuit did not target protected activity because it sought redress for defendants' breach of the unlawful detainer settlement agreement, violation of the SMRCO, and breach of the Gilliland agreement. Plaintiff argued that a suit for breach of a settlement agreement was not protected activity, nor was violation of the rent control laws. Further, he would prevail on the merits because the Pickarts failed to move into the apartment within 30 days and the statute did not impose a "good faith" requirement; the unlawful detainer settlement did not collaterally bar his claims; and the Pickarts never intended to occupy the unit. Plaintiff sought attorney fees of $14,861, arguing that defendants' motion was frivolous because plaintiff's claims were not based upon the filing of the unlawful detainer action, but the first three causes of action were based upon the Pickarts' failure to move into the apartment, and the fourth and fifth causes of action were based upon the Gilliland agreement.

The trial court found the first cause of action arose from petitioning conduct.[6] On the merits, the court stated that although the judge prepared a tentative ruling in the unlawful detainer action regarding plaintiff's motion to enforce the settlement, the unlawful detainer court dismissed the action without making any findings, although the settlement preserved all of plaintiff's rights under the SMRCO. As a result, the trial court found there was no collateral estoppel from the hearing in the unlawful detainer action. The trial court concluded defendants' special motion to strike should be denied with respect to the first cause of action, and stated that "the same analysis would apply to each [of the] other cause[s] of action." The

---

[6] The record does not contain an official reporter's transcript, but contains a copy of the transcript provided by the parties. (See Cal. Rule of Court, rule 8.120(b).) As neither party disputes the contents of the transcript, we will accept it as accurate for purposes of our appellate review.

court did not award plaintiff attorney fees on the motion because plaintiff had not shown that the motion was frivolous.

## DISCUSSION

Defendants argue that the first and second causes of action—which assert violations of the SMRCO and the settlement agreement arising out of the unlawful detainer action—directly implicate protected litigation activity because those causes of action arose from their prosecution of the unlawful detainer action. On the merits, defendants argue that plaintiff has not demonstrated a reasonable probability of prevailing because the Pickarts intended in good faith to move into the residence within 30 days; the litigation privilege protects defendants' conduct that occurred during litigation; and plaintiff's claims based upon the Gilliland agreement are unsubstantiated because plaintiff does not allege the landlord defendants are parties to the Gilliland agreement.

## I.     Discussion

Section 425.16 permits a court to strike any cause of action that arises from the defendant's exercise of his or her constitutionally protected free speech rights or petition for redress of grievances. (§ 425.16, subd. (b)(1); *Flatley v. Mauro* (2006) 39 Cal.4th 299, 311–312.) In ruling on a special motion to strike brought under section 425.16, the trial court must engage in a two-step process. First, the court must determine "whether defendant has made a threshold showing that the challenged cause of action [arises from] a protected activity." Second, if the defendant makes this showing, the trial court must determine "whether the plaintiff has established a probability of prevailing on the claim." *(Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 733.) The burden is on the defendant on the first prong to show the action is within the statute; if the defendant succeeds, the burden shifts to the plaintiff to establish a probability of prevailing. (*Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 928.)

In making these determinations, the trial court considers the pleadings, and supporting and opposing affidavits. (*Equilon Enterprises v. Consumer Cause, Inc*. (2002) 29 Cal.4th 53, 67.) We review the trial court's ruling on the motion to strike independently under a de novo

6

standard. (*Flatley v. Mauro*, *supra*, 39 Cal.4th at p. 325.) We do not weigh credibility, but accept as true the evidence favorable to plaintiff and evaluate the defendant's evidence only to determine whether it defeats the plaintiff's evidence as a matter of law. (*Id*. at p. 326.)

Subdivision (e) of section 425.16 delineates the type of speech or petitioning activity protected. These acts include (1) written or oral statements made before a legislative, executive, or judicial proceeding; (2) written or oral statements "made in connection with an issue under consideration or review by a legislative, executive, or judicial body"; (3) written or oral statements "made in a place open to the public or in a public forum in connection with an issue of public interest"; or (4) "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).) Thus, if the speech is made or the activity is conducted in an official proceeding authorized by law, it need not be connected to a public issue, but if it is made or conducted apart from an official proceeding, then there is a public issue requirement. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1117–1119.)

Courts have not precisely defined the boundaries of a cause of action that "arises from" such protected activity. (§ 425.16, subd. (b).) *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 explained that "the statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." *Navellier v. Sletten* (2002) 29 Cal.4th 82 cautioned that the "anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Id*. at p. 92.) Thus, whether the plaintiff's lawsuit intended to chill or actually chilled the defendant's conduct is not relevant. (*Equilon Enterprises*, *supra*, 29 Cal.4th at p. 58.)

7

Whether the statute applies is determined from the "*principal thrust* or *gravamen*" of the plaintiff's claim. (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 187.) For this reason, the sequence in which actions are filed is not determinative of whether a lawsuit is a prohibited suit. The mere fact that a lawsuit was filed after the defendant engaged in protected activity does not establish the complaint "arose from" protected activity under the statute because a cause of action may be triggered by protected activity without arising from it. (*Cotati*, *supra*, 29 Cal.4th at pp. 76–77, 78.)

Numerous SLAPP cases have discussed a landlord's unlawful detainer action that is followed by a tenant's lawsuit. Unless the sole basis of liability asserted in the tenant's complaint is the filing and prosecution of the unlawful detainer action, the tenant's action will not be targeted at protected activity. (*Birkner v. Lam* (2007) 156 Cal.App.4th 275, 281–282 [where action directed solely at filing of unlawful detainer action, the unlawful detainer action is protected activity for purposes of SLAPP action].) Where, however, the action is predicated upon conduct distinct from the prosecution of unlawful detainer action—even though the complaint is based upon the unlawful detainer action or arises from it—the tenant's action is not targeted at protected activity and thus does not meet the first prong of the SLAPP analysis. (*Marlin v. Aimco Venezia, LLC* (2007) 154 Cal.App.4th 154.)

In *Marlin v. Aimco Venezia, LLC*, *supra*, 154 Cal.App.4th 154, the landlord served the tenants with notices under the Ellis Act (Gov. Code, § 7060 et seq.) that the landlord intended to withdraw the rental units from the market. The tenants brought a declaratory relief action, citing improper reliance on the Ellis Act, and the landlord filed a motion to strike. The court held that even if the filing of the Ellis Act notices was protected activity, the tenants' action was directed at wrongful reliance on the Ellis Act, not at the filing of the notices of removal. (*Marlin*, at pp. 160–161.)

In *Santa Monica Rent Control Bd. v. Pearl Street, LLC* (2003) 109 Cal.App.4th 1308, 1316–1319, the court concluded the lawsuit at issue, brought by the rent control board, was based on the landlords' charging of unlawful rents, not on their filing of regulatory paperwork with the board. Even assuming submitting the regulatory paperwork qualified as protected

8

petitioning activity, the court explained that was not the basis of the board's claims again the landlords. "[W]hile th[e] suit may have been 'triggered by' [the landlords'] submission of such documents to the Board, it is *not* true that this suit is *based on* the filing of such papers." (*Id*. at p. 1318.) Instead, it was based on the landlords' alleged violation of the rent control ordinance. There is no "authority for the proposition that their conduct in charging illegal rent is an act in furtherance of their rights of petition or free speech." (*Ibid*.)

*Clark v. Mazgani* (2009) 170 Cal.App.4th 1281 employed the same reasoning. In *Clark*, the landlord filed an unlawful detainer action to evict a tenant, "ostensibly to free the unit for occupancy by the landlord's daughter." (*Id*. at p. 1284.) However, the daughter never moved in, and the evicted tenant subsequently sued for fraud, unlawful eviction, and failure to pay relocation expenses. (*Ibid*.) *Clark* once again explained the tenant's lawsuit "is not based on . . . filing or service of the notices of intent to evict, it is not based on anything [the landlord] said in court or a public proceeding, and it is not based on the fact that [the landlord] prosecuted an unlawful detainer action . . . . The complaint is based on [the landlord's] allegedly unlawful eviction, in that she fraudulently invoked the [rent ordinance] to evict [the tenant] from her rent-controlled apartment as a ruse to provide housing for her daughter, but never installed her daughter in the apartment as required by that ordinance, and also that she failed to pay [the tenant's] relocation fee." (*Id*. at p. 1288.)

Indeed, numerous cases have addressed anti-SLAPP motions that were not properly advanced in the context of a landlord-tenant dispute. (See e.g., *Moriarty v. Laramar Management Corp.* (2014) 224 Cal.App.4th 125, 133 [wrongful eviction claim premised on violation of San Francisco rent control ordinance did not arise from protected activity, though it followed the filing of unlawful detainer action]; *Copenbarger v. Morris Cerullo World Evangelism* (2013) 215 Cal.App.4th 1237, 1240 ["while the three-day notice might have triggered the complaint, the evidence in the record demonstrates the complaint was based on an underlying dispute over . . . repair and maintenance obligations under the sublease and other unprotected activities"]; *Oviedo v. Windsor Twelve Properties, LLC* (2012) 212 Cal.App.4th 97, 110–111 ["appellant's first cause of action is based, not on the unlawful

9

detainer action and prior communications, but on respondent's alleged violation of the" Rent Stabilization Ordinance, thus "respondents 'were not sued for their conduct in exercising . . . constitutional rights' but for the underlying conduct of illegally raising appellant's rent"]; *Delois v. Barrett Block Partners* (2009) 177 Cal.App.4th 940, 953 ["plaintiff's action here did not challenge any 'communications preparatory [to] or in anticipation of' a lawsuit" but "defendants' actions in allegedly breaching the Tenancy Termination Agreement" and "the landlords' failure to return plaintiff's rental deposit and other promised refunds"].)

These authorities are precisely on point here. Plaintiff's complaint is not directed at the act of defendants' filing the unlawful detainer proceedings or the parties' act of settling the matter. Rather, it is directed the Pickarts' acts constituting a purported breach of the settlement agreements based on their conduct in failing to occupy plaintiff's apartment in a timely fashion as required by the SMRCO. The few landlord-tenant cases that have concluded special motions to strike were appropriately brought are distinguishable. (See, e.g., *Birkner v. Lam*, *supra*,156 Cal.App.4th 275; *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467; *Copenbarger v. Morris Cerullo World Evangelism*, *supra*, 215 Cal.App.4th at p. 1237.) In *Birkner* and *Feldman*, the eviction notices and unlawful detainer actions were "not merely cited as *evidence*" of the landlord's allegedly wrongful conduct but were the "sole basis for liability." (*Feldman*, at p. 1483; *Birkner*, at p. 283.)

Further, plaintiff's action is not collaterally estopped by his misguided attempt to enforce the settlement agreement in the unlawful detainer proceedings. As the trial court in the unlawful detainer proceedings recognized, such proceedings are limited proceedings. The sole issue in an unlawful detainer proceedings is possession of the premises. Thus, the trial court there did not have the authority to resolve the dispute arising from the purported breach of the unlawful detainer settlement and therefore did not do so. (*Moriarty v. Laramar*, *supra*, 224 Cal.App.4th at p. 141.)

10

As we conclude that plaintiff's complaint is not directed at protected activity, we need not consider the second prong of the analysis. (*Demetriades v. Yelp, Inc.* (2014) 228 Cal.App.4th 294, 312.)

### A. Cross-appeal

Plaintiff cross-appeals the trial court's denial of attorney fees.

The court shall award attorney fees to a plaintiff who prevails on a special motion to strike if the court finds that the defendants' motion was "frivolous or solely intended to cause unnecessary delay." In such case, the court is required to award costs and reasonable attorney fees to the plaintiff pursuant to section 128.5 as a sanction. (§ 425.16, subd. (c)(1); *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131.)[7]

The court must apply the procedures and substantive standards of section 128.5 in ruling on the motion. (*Moore v. Shaw* (2004) 116 Cal.App.4th 182, 199.) For a determination that a SLAPP action was frivolous, the court must make a finding that the defendant's motion was "totally and completely without merit," namely "any reasonable attorney would agree such motion is totally devoid of merit." (*Baharian-Mehr v. Smith* (2010) 189 Cal.App.4th 265, 275.) Section 128.5, subdivision (c) requires the trial court to "recite in detail the conduct or circumstances justifying the order." (See *Foundation for Taxpayer & Consumer Rights v. Garamendi* (2005) 132 Cal.App.4th 1375, 1388.)

Here, we affirm the trial court's order finding that plaintiff's complaint is not subject to a motion to strike. We remand the matter for a determination of whether defendants' motion was frivolous, whether plaintiff is entitled to attorney fees and if so, the amount of such fees.

---

[7] Under section 425.16, subdivision (c)(1), "If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5." Under that subdivision (a) of section 128.5, "Every trial court may order a party, the party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay."

11

## DISPOSITION

The order of the superior court is affirmed to the extent that it denied defendants' special motion to strike, and is reversed to the extent it denied plaintiff's attorney fees and costs. The trial court is directed, consistent with the views expressed in this opinion, to evaluate whether plaintiff is entitled to attorney fees for his successful defense of the special motion to strike and if so, in what amount.

JOHNSON, J.

We concur:

ROTHSCHILD, P. J.

CHANEY, J.

12

Filed 11/24/14

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ADI BEN-SHAHAR, | B250728, B251417 |
| | (Los Angeles County |
| Plaintiff and Respondent, | Super. Ct. No. BC502792) |
| v. | CERTIFICATION AND |
| | ORDER FOR PUBLICATION |
| DANIEL PICKART et al., | |
| Defendants and Appellants. | |

The opinion in the above-entitled matter filed October 31, 2014, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.


ROTHSCHILD, P. J.   CHANEY, J.   JOHNSON, J.