Filed 3/2/16  Cosmo Nail Bar v. The Irvine Co. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| COSMO NAIL BAR, INC., | |
| Plaintiff, Cross-defendant and Appellant, | G051724 |
| v. | (Super. Ct. No. 30-2014-00755715) |
| THE IRVINE COMPANY, LLC, | O P I N I O N |
| Defendant, Cross-complainant and Respondent. | |

Appeal from an order of the Superior Court of Orange County, Craig L. Griffin, Judge.  Affirmed.

Law Office of Andrew D. Weiss and Andrew D. Weiss for Plaintiff, Cross-defendant and Appellant.

Bewley, Lassleben& Miller, Ernie Zachary Park for Defendant, Cross-complainant and Respondent.

\*          \*          \*

This is an appeal from an order denying a motion pursuant to Code of Civil Procedure section 425.16,[1] the anti-SLAPP statute.[2] Tenant Cosmo Nail Bar, Inc. (Cosmo or the tenant), sued The Irvine Company, LLC (Irvine Co. or the landlord), for various causes of action relating to a dispute over the lease. Irvine Co. then filed a cross-complaint alleging breach of that lease. Cosmo moved to strike the cross-complaint under the anti-SLAPP statute, arguing it arose from the complaint. The trial court disagreed, concluding it had arisen from the underlying dispute. We agree with the trial court and therefore affirm.

I

FACTS

In the fall of 2013, Irvine Co. and Cosmo entered into a lease for a commercial location in a Newport Beach shopping center (the property). For the tenant, the lease was signed by Duong Dang as the tenant's CEO. Dang also signed a personal guaranty of the lease.

The lease included, in paragraph 12.2, a clause requiring Cosmo to indemnify and hold Irvine Co. harmless from claims "in any way connected to Tenant's use of the Premises" and "Tenant's activities within the Shopping Center," unless caused by Irvine Co.'s negligence or misconduct. Even in such cases, Cosmo agreed to accept a tender of defense until the facts were determined.

On November 3, 2014, Irvine Co. representative Julie Harchar received a telephone call from Dang asking her to come to the property due to a dispute of some

---

[1]Unless otherwise indicated, subsequent statutory references are to the Code of Civil Procedure.

[2]"SLAPP is an acronym for 'strategic lawsuit against public participation.'" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)

2

kind. When Harchar arrived, she saw Dang and other individuals she did not know standing in the common area of the center near the property. The Newport Beach police were also present, due to the disturbance. Harchar was told that due to a dispute, the other individuals had changed the locks and locked Dang out of the property. Dang asked Harchar to confirm to a locksmith that Dang had called and that she, Dang, was the tenant. Based on the lease and Harchar's prior interactions with Dang, Harchar confirmed for the locksmith that she understood Dang to be the tenant's principal and asked the locksmith to comply with her request. Harchar's understanding was that the locksmith did change the locks.

On November 7, in a written action in lieu of a corporate meeting, Cosmo's other directors terminated Dang as an officer and from all employment with Cosmo. New officers were named.

On November 10, Cosmo filed a complaint against Irvine Co., Harchar, Dang, and numerous other defendants. The complaint alleged that Dang had been elected president of Cosmo in 2013. At some later point, a dispute arose between Dang and other members of Cosmo. Dang signed a fictitious business statement stating that her corporation, Dang It, Inc., would conduct business under Cosmo's name. The disputes came to a head on the day Harchar was called to the property.

As to Irvine Co., the complaint alleged forcible entry and detainer, theft, and breach of lease. Essentially, the complaint alleged that Irvine Co. had wrongfully turned over possession of the property to Dang by permitting the locks to be changed, thereby evicting Cosmo, constituting forcible entry and detainer and breach of the lease. The alleged theft was the "substantial sums" Cosmo had spent improving the property, as well as furnishings, equipment, and supplies. The complaint also sought injunctive relief ordering the property returned to Cosmo's possession on both a temporary and a permanent basis.

3

On November 16, Irvine Co.'s counsel sent a letter to Cosmo's attorney, requesting Irvine Co. and Harchar be dismissed from the lawsuit. Should Cosmo refuse to do so, Irvine Co. tendered its defense under paragraph 12.2 of the lease. Cosmo declined to dismiss either defendant and denied the indemnity provision applied.

Shortly thereafter, Irvine Co. filed a cross-complaint for breach of lease. The cross-complaint alleged that Cosmo had breached the lease by failing to indemnify Irvine Co. under paragraph 12.2.

On January 2, 2015, the trial court issued a preliminary injunction against Dang and other defendants (but not Irvine Co.), enjoining them from interfering with Cosmo's possession of the property.

On January 20, Cosmo filed an anti-SLAPP motion as to the cross-complaint, arguing it was based solely on Cosmo's "exercise of the constitutional right of petition." The trial court disagreed, concluding the cross-complaint "does not arise from an act in furtherance of Cosmo's free speech rights or right to petition. Cosmo is suing [Irvine Co.] for forcible detainer, theft, and breach of lease. The Irvine Co. is not suing Cosmo for filing its Complaint; it is suing Cosmo to enforce a lease provision it contends may require Cosmo to defend and indemnify [Irvine Co.]" Cosmo now appeals.

II

DISCUSSION

A. *The Anti-SLAPP Statutory Framework*

The anti-SLAPP statute states: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the

4

claim." (§ 425.16, subd. (b)(1).)[3]The purpose of the anti-SLAPP statute is to dismiss meritless lawsuits designed to chill the defendant's free speech rights at the earliest stage of the case. (See *Wilcox v. Superior Court*(1994) 27 Cal.App.4th 809, 815, fn. 2.) The statute is to be "construed broadly." (§ 425.16, subd. (a).)

Section 425.16, subdivision (e), specifies the type of acts covered by the statute. As relevant here, an "'act in furtherance of a person's right of petition or free speech . . . in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . ." (§ 425.16, subd. (e).)

To determine whether an anti-SLAPP motion should be granted or denied, the trial court engages in a two-step process. "'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue," as defined in the statute. (§ 425.16, subd. (b)(1).)'" (*Jarrow Formulas*, *Inc. v. LaMarche*, *supra*, 31 Cal.4th at p. 733.)

If that threshold is met, courts then look to the second step, determining whether the plaintiff has demonstrated a probability of prevailing on the merits. To do so, the plaintiff must state and substantiate a legally sufficient claim (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1122-1123), thereby demonstrating his case has at least minimal merit. (*Cole v. Patricia A. Meyer &*

---

[3]For our purposes, "plaintiff" refers to Irvine Co., and "defendant" to Cosmo.

5

*Associates, APC* (2012) 206 Cal.App.4th 1095, 1105.) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navellier*).)

On appeal, we "review an order granting an anti-SLAPP motion de novo, applying the same two-step procedure as the trial court. [Citation.]" (*Cole v. Patricia A. Meyer & Associates, APC*, *supra*,206 Cal.App.4th at p. 1105.) In conducting our review, "[w]e consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.'[Citation.]" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)


*B. Protected Activity*

We must first decide whether the challenged claims arise from acts in furtherance of Irvine Co.'s right of free speech or right of petition under one of the categories set forth in section 425.16, subdivision (e). In doing so, "[w]e examine the *principalthrust* or *gravamen* of a plaintiff's cause of action to determine whether the anti-SLAPP statute applies . . . ." (*Ramona Unified School Dist. v. Tsiknas* (2005) 135 Cal.App.4th 510, 519-520.)

"We assess the principal thrust by identifying '[t]he allegedly wrongful and injury-producing conduct . . . that provides the foundation for the claim.' [Citation.]" (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1272.) We keep in mind that "[i]n the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity. [Citations.]" (*Navellier*, *supra*, 29 Cal.4th at p. 89.) "The mere fact that a lawsuit was filed after the defendant engaged in protected activity does not establish the complaint 'arose from' protected activity under the statute because a cause of action may be

6

triggered by protected activity without arising from it. [Citation.]" (*Ben-Shahar v. Pickart*(2014) 231 Cal.App.4th 1043, 1051.)

The pertinent question here is not whether filing the complaint is a protected activity – clearly, it is. The question is whether Irvine Co.'s claims *arise from* that activity, or from something else. Cosmo relies almost exclusively on two cases for this point. In *Navellier, supra,*29 Cal.4th 82, the plaintiffs sued the defendant, Sletten, in federal court. They alleged Sletten had breached his fiduciary duty by terminating the plaintiffs' contract to provide investment advisory services, among other things. A few months after the plaintiffs filed the federal case, Sletten entered into an agreement, rehiring the plaintiffs. As part of that agreement, Slettensigned a general release that released all claims against the plaintiffs except for indemnity and contribution. (*Id.* at pp. 85-86.) The plaintiffs, however, did not dismiss the federal action, and instead filed an amended complaint. Sletten then filed counterclaims, a number of which were barred by the federal court due to the general release. (*Id.* at pp. 86-87.) The plaintiffs then filed a new lawsuit in state court, arguing Sletten had breached the release by filing the counterclaims and committing fraud by misrepresenting his intent to be bound by the release. (*Id.* at p. 87.)

The Supreme Court ultimately concluded the "arising from" prong of the anti-SLAPP statute was satisfied because all of the plaintiffs' claims arose from protected activities. "In alleging fraud . . . plaintiffs complain about Sletten's alleged negotiation, execution, and repudiation of the Release. . . . Sletten's negotiation and execution of the Release, therefore, involved 'statement[s] or writing[s] made in connection with an issue under consideration or review by a ... judicial body' (§ 425.16, subd. (e)(2)), i.e., the federal district court, and his arguments respecting the Release's validity were 'statement[s] or writing[s] made before a ... judicial proceeding'. . . ." (*Navellier, supra,*29 Cal.4th at p. 90.) The gravamen of the acts complained of in *Navellier* was based on protected activity, rather than merely triggered by it. (*Id.* at p. 89.)

7

In *Lennar Homes of California, Inc. v. Stephens* (2014) 232 Cal.App.4th 673 (*Lennar*), the appellate court upheld the trial court's decision concluding the action qualified as a SLAPP under section 425.16. In *Lennar*, the defendants were buyers who had purchased a new home from the plaintiff. Stella Stephens was the named plaintiff in a federal class action alleging numerous claims against Lennar, including "fraudulent nondisclosure and misrepresentation under a variety of legal theories." (*Id.* at p. 678.) The federal lawsuit was eventually dismissed and was on appeal before the Ninth Circuit when Lennar filed suit against the defendants, seeking to enforce the indemnity clause in their purchase contracts. (*Ibid.*) The trial court granted the anti-SLAPP motion, agreeing with the defendants that their cause of action was based on the protected activity of filing the federal class action, and further determining Lennar could not prevail "on the merits because the indemnity clause was unenforceable." (*Id.* at p. 679.) The Court of Appeal agreed, but in that case, Lennar did not dispute the important fact of whether its cause of action arose from the filing and litigation of the federal class action. (*Id.* at p. 680.)

We conclude *Lennar* is distinguishable or otherwise inapplicable for a number of reasons. First, Lennar did not dispute the keyissue here, and accordingly, the question of whether Lennar's action "arose from" the federal lawsuit or an underlying dispute was not discussed. "'Opinions are not authority for issues they do not consider. [Citations.]' [Citation.]" (*Melchor Investment Co. v. Rolm Systems* (1992) 3 Cal.App.4th 587, 591.)

Second, Lennar's action was not a cross-complaint. If we take Cosmo's argument to its logical conclusion, every cross-complaint is a SLAPP because "but for

8

the filing of [Cosmo's] Complaint, the Cross-Complaint would not have been filed."[4] This is true of every cross-complaint, and it reflects the type of simplistic analysis the Supreme Court has warned us to avoid. "To construe 'arising from' in section 425.16, subdivision (b)(1) as meaning 'in response to,' . . . would in effect render all cross-actions potential SLAPP's." (*City of Cotati v. Cashman*(2002) 29 Cal.4th 69, 77.) Cosmo would have us do just that, but we must look further, and examine the gravamen of the claim.

"Determining the gravamen of the claims requires examination of the specific acts of alleged wrongdoing and not just the form of the claim. [Citation.]" (*Bergstein v. Stroock&Stroock&Lavan LLP* (2015) 236 Cal.App.4th 793, 804.) When all is said and done, that determination is a simple one in the instant case. There is an underlying disagreement between the parties about the application of the indemnity agreement and whether it applies to claims between the parties as opposed to claims brought by a third party. While this disagreement was triggered by the filing of the complaint, it was not caused by it, and the gravamen of the action – the applicability of the indemnification clause – has nothing to do with the fact that Cosmo sued Irvine Co. first.

Because we conclude the cross-complaint is not a SLAPP, we need not proceed to the second part of the analysis and determine whether Irvine Co. is likely to succeed on the merits of its claim.

---

[4] Compare this to the following language in *Navellier*: "but for the federal lawsuit and Sletten's*alleged actions taken in connection with that litigation*, plaintiffs' present claims would have no basis." (*Navellier, supra,*29 Cal.4th at p. 90, italics added.) These concepts, simply put, are not the same. *Navellier* looks to the underlying basis of the claims, while Cosmo would simply have us accept that because the cross-complaint was filed after the complaint, it arises from it.

## III

## DISPOSITION

The order is affirmed.  Irvine Co. is entitled to its costs on appeal.


MOORE, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


BEDSWORTH, J.