Filed 2/7/25  Cotchett v. Romano CA1/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| RACHAEL COTCHETT,<br><br>         Plaintiff and Respondent,<br><br>v.<br><br>DONNA ROMANO,<br><br>         Defendant and Appellant. | A169927<br><br>(Sonoma County<br>Super. Ct. No. SCV273177) |

Rachael Cotchett filed the instant action against Donna Romano alleging Romano wrongfully repudiated the parties' agreement permitting Cotchett to operate a flower farming and retail business on Romano's land as a joint venture of the parties.  Romano filed a special motion to strike under the anti-SLAPP law (Code Civ. Proc., § 425.16, et seq.), arguing Cotchett's claims arise from Romano's protected conduct of serving a 30-day notice to quit on Cotchett and prosecuting an unlawful detainer action to remove Cotchett from Romano's property.  The record, however, discloses that the action arises from Romano's alleged breach of the parties' agreement and other unprotected conduct.  Accordingly, we affirm the trial court's denial of the motion.

### FACTUAL AND PROCEDURAL BACKGROUND

In the operative first amended complaint, Cotchett alleges that in 2021, she and her long-time friend Romano entered into an oral contract to develop

1

and operate a flower farming and retail operation called "Sol Sistas." Under the parties' alleged oral agreement, Romano agreed to contribute the use of her land in Kenwood for the development and operation of a retail flower shop. Cotchett agreed to build, set up, and run the operation, and it was understood that Romano would completely own the operation 10 years after its anticipated opening in 2023. Cotchett alleges she invested significant funding and labor to start the operation in reliance on the parties' oral agreement.

In January 2023, however, Romano allegedly demanded that Cotchett execute a lease for rental of her property, immediately return all keys, and leave the property. When Cotchett attempted to remove her equipment from the property, Romano said she could not enter the property without Romano's approval. Cotchett and her workers have since "been locked out of the farm" and unable to retrieve all of her property, including the "Retail/Staffing building," agricultural plants, and an equipment and shed that "were specifically entrusted to ROMANO through a joint venture which ROMANO never intended to honor."

On May 1, 2023, Cotchett filed the instant action against Romano alleging: (1) breach of contract; (2) promissory fraud; (3) intentional misrepresentation; (4) violation of the Unfair Competition Law (UCL) (Bus. & Prof. Code, § 17200); (5) breach of the implied covenant of good faith and fair dealing; and (6) violation of Penal Code section 496, subdivision (c). A few weeks later, Cotchett filed a first amended complaint that added a seventh cause of action for quantum meruit and omitted an allegation (and supporting exhibit) regarding Romano's March 28, 2023, service on Cotchett of a 30-day notice to the quit the property.

2

Romano filed a special motion to strike the first amended complaint, arguing the claims arose from Romano's exercise of protected conduct, "*to wit*, the service of a 30-Day Notice to Quit on [Cotchett] and the filing of an unlawful detainer action to terminate [Cotchett's] claim to any right to possession of the subject property." Romano further argued she had a reasonable probability of prevailing on the merits of the claims because there was no admissible evidence of a joint venture; Cotchett's contract claim violated the statute of frauds; the breach of implied covenant claim failed without an underlying enforceable contract; and the claims for fraud, violation of the UCL and Penal Code, and quantum meruit were not sufficiently pled or were factually unsupported.

Cotchett disputed Romano's characterization of her claims, emphasizing her action arises out of Romano's unprotected conduct of repudiating the parties' business agreement and refusing to allow Cotchett access to the property.

Romano and Cotchett each submitted declarations and exhibits in support of their respective positions. As relevant here, the declarations established as follows. In March 2023, Romano served Cotchett with a 30-day notice to quit the property. A week after Cotchett filed the instant action on May 1, 2023, Romano filed the first of two unlawful detainer actions in the Sonoma County Superior Court (case nos. MCV-261824 and MCV-261913) but eventually "voluntarily dismissed both of these actions." Romano dismissed the second of her two unlawful detainer actions after the trial court denied her motion for a protective order to stop her deposition and stay all discovery until the anti-SLAPP motion in Cotchett's action was resolved. The unlawful detainer court also sanctioned Romano and her counsel in the

3

amount of $2,000 for seeking the protective order without substantial justification.

The trial court denied Romano's anti-SLAPP motion at the first step of the two-part analysis, ruling that the first amended complaint did not arise from Romano's protected conduct. In the court's words, "The timing of the filing of the complaint and the fact that the original complaint makes mention of the 30-day Notice to Quit is not sufficient to show that the 'principal thrust or gravamen' of [Cotchett's] complaint is the filing and prosecution of the unlawful detainer. The complaint does not formally challenge the unlawful detainer process in any way. [¶] Rather, [Cotchett] raises several causes of action arising out of a breach of contract dispute between alleged former business partners. While [Romano] has shown that the instant complaint is in some way related to the unlawful detainer action, she has not shown that it is *based* on it."

The trial court then denied Cotchett's request for sanctions against Romano, finding the anti-SLAPP motion was not frivolous or solely intended to cause unnecessary delay.

Romano timely appealed.

## DISCUSSION

Section 425.16 of the Code of Civil Procedure[1] authorizes a special motion to strike causes of action that arise from any act in furtherance of the moving defendant's "right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).) The anti-SLAPP law "allows defendants to request early judicial screening of legal claims targeting free speech or petitioning

---

[1] Further unspecified statutory references are to this code.

4

activities" (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 880–881), and its provisions must be construed broadly (§ 425.16, subd. (a)).

Resolution of an anti-SLAPP motion involves a two-part inquiry. First, the moving defendant must make a prima facie showing that the challenged claim or claims arise from the defendant's constitutionally protected free speech or petition rights. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 381–382, 396 (*Baral*).) Second, if the defendant makes this showing, then the burden shifts to the plaintiff to demonstrate the claim's merit by establishing a probability of success. (*Id.* at p. 396.) We review de novo a trial court's decision to grant or deny an anti-SLAPP motion. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325–326; *Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 768.) We do not weigh the evidence, and we accept " ' " 'as true the evidence favorable to the plaintiff' " ' " and evaluate " ' " 'the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' " ' " (*Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1478 (*Feldman*).)

To satisfy the first step of the anti-SLAPP analysis, a defendant must demonstrate "that the 'conduct by which plaintiff claims to have been injured falls within one of the four categories described in subdivision (e) [of section 425.16]' [citation], and that the plaintiff's claims in fact arise from that conduct [citation]." (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 620, italics omitted.) As relevant here, conduct protected under the anti-SLAPP law includes statements made before a judicial proceeding and those in connection with an issue under consideration by a judicial body. (§ 425.16, subd. (e)(1), (2).)

There is no dispute that prosecuting an unlawful detainer action is a protected act within the meaning of the anti-SLAPP statute. (See *Kashian v.*

5

*Harriman* (2002) 98 Cal.App.4th 892, 908; *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115.) However, the record here discloses that Cotchett filed the instant action a week *prior to* Romano's filing of the first of her two unlawful detainer actions. Though Cotchett's claims could not have arisen from acts that had yet to occur, the record also discloses that Cotchett filed this action after being served with the notice to quit Romano's property. Case law establishes that service of a 30-day notice to quit is a "legally required prerequisite to the filing of the unlawful detainer action" and constitutes protected communicative conduct as a "communication preparatory to the bringing of the unlawful detainer action." (*Feldman*, *supra*, 160 Cal.App.4th at p. 1480; see *Birkner v. Lam* (2007) 156 Cal.App.4th 275, 281 (*Birkner*).) Thus, the precise question raised in this case is whether Cotchett's causes of action arise from Romano's service of the notice to quit.

Romano emphasizes that Cotchett filed the instant action on the day the notice to quit was set to expire, and that Cotchett's original complaint explicitly referred to and attached a copy of the notice to quit. In Romano's view, Cotchett's "true intent" was revealed when she amended her complaint to omit this reference after "belatedly realizing that the 30-Day Notice to Quit was a constitutionally protected act." We are not persuaded. The mere fact that the action was filed after service of the notice to quit does not mean the action arose from that activity for purposes of anti-SLAPP statute. (See *Marlin v. Aimco Venezia, LLC* (2007) 154 Cal.App.4th 154, 160.) Even if we indulge the inference that Cotchett filed the instant action as a direct response to Romano's service of the notice to quit, this does not demonstrate that Cotchett's claims arise from that protected conduct.

"A claim arises from protected activity when that activity underlies or forms the basis for the claim. [Citations.] Critically, 'the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.' " (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1063, 1064 (*Park*).) This calls for distinguishing "between speech or petitioning activity that is mere *evidence* related to liability, and liability that is *based on* speech or petitioning activity." (*Gotterba v. Travolta* (2014) 228 Cal.App.4th 35, 42 (*Gotterba*).) Specifically, "courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Park*, at p. 1063.) When the relief is sought based on allegations of protected and unprotected activity, the allegations of unprotected activity are disregarded at the first stage, as are allegations of protected conduct that are " 'merely incidental' or 'collateral' " or "that merely provide context, without supporting a claim for recovery[.]" (*Baral*, *supra*, 1 Cal.5th at p. 394.)

A pair of Supreme Court decisions illustrates why the anti-SLAPP law does not apply here notwithstanding Romano's service of the notice to quit. In *Park*, *supra*, 2 Cal.5th 1057, the Supreme Court held that a discrimination claim brought by a university professor who was denied tenure did not arise from the university's protected statements and communications during the official tenure process. Employing an elements-focused approach, *Park* concluded the elements of the discrimination claim "depend not on the grievance proceeding, any statements, or any specific evaluations of him in the tenure process, but only on the denial of tenure itself and whether the motive for that action was impermissible." (*Park*, at p. 1068.) Consequently, the university's protected statements "may supply evidence of animus, but

7

that does not convert these statements themselves into the basis for liability." (*Ibid.*) In rejecting application of the anti-SLAPP statute, *Park* reasoned that the plaintiff " 'could have omitted allegations regarding communicative acts or filing a grievance and still state the same claims.' " (*Ibid.*)

In *City of Cotati v. Cashman* (2002) 29 Cal.4th 69 (*City of Cotati*) the Supreme Court held that a city's state court declaratory relief action alleging a controversy with mobile home park owners over the constitutionality of a rent stabilization ordinance did not arise out of protected activity even though it was filed in response to the owners' prior federal court declaratory relief action challenging the constitutionality of the same ordinance. (*Id.* at p. 71.) As the court explained, "the mere fact an action was filed after protected activity took place does not mean it arose from that activity. The anti-SLAPP statute cannot be read to mean that 'any claim asserted in an action which arguably was filed in retaliation for the exercise of speech or petition rights falls under section 425.16, whether or not the claim is *based* on conduct in exercise of those rights.' " (*Id.* at pp. 76–77.) "[A] claim filed in response to, or in retaliation for, threatened or actual litigation is not subject to the anti-SLAPP statute simply because it may be viewed as an oppressive litigation tactic. [Citation.] That a cause of action arguably may have been triggered by protected activity does not entail that it is one arising from such." (*Id.* at p. 78.)

Thus, even assuming the instant action was brought in direct response to Romano's service of the notice to quit, the claims themselves substantively arise not from that protected conduct but from the parties' underlying dispute over whether they had an oral contract that permitted Cotchett to access and operate the flower growing and retail operations on Romano's property without having to pay rent. Cotchett does not challenge the legality of

8

Romano's use of the unlawful detainer process, nor does Cotchett base her claims for damages on the unlawful detainer prosecution or anything in the notice to quit. Despite the original complaint's reference to the notice to quit, Cotchett could have " 'omitted allegations regarding' " Romano's service of the notice to quit " 'and still state the same claims.' " (*Park*, *supra*, 2 Cal.5th at p. 1068.) Indeed, this is precisely what Cotchett did in amending her original complaint. And because the omitted allegation regarding the notice to quit does not "support[] a claim for recovery," it is at best " 'merely incidental' or 'collateral' " to Cotchett's claims and does not trigger the protections of the anti-SLAPP law. (*Baral*, *supra*, 1 Cal.5th at p. 394.)

Application of *Park*'s elements-based approach to the first anti-SLAPP step yields the same result. (*Park*, *supra*, 2 Cal.5th at p. 1063.) The elements of a cause of action for breach of contract are the existence of a contract; the plaintiff's performance or excuse for nonperformance; the defendant's breach; and resulting damages to plaintiff. (*Bushell v. JPMorgan Chase Bank, N.A.* (2013) 220 Cal.App.4th 915, 921.) The factual allegations of the first amended complaint that supply these elements are that the parties agreed to engage in a joint venture in which Cotchett was permitted to operate Sol Sistas on Romano's property, that Romano breached this agreement by demanding that Cotchett agree to new terms (the lease agreement), and that Romano's denying Cotchett access to the property and withholding Cotchett's plants and equipment caused Cotchett to suffer damages. Romano's service of the notice to quit may be said to constitute evidence of Romano's alleged breach, but it does not supply any element necessary to state the claim. (See *Gotterba*, *supra*, 228 Cal.App.4th at p. 42.) Even if Romano never served the notice to quit, Cotchett would still have the same claim that Romano breached the contract by refusing to permit

9

Cotchett to operate the business on her property rent free and denying her access to the land pursuant to their alleged agreement.

Likewise, the factual allegations that supply the elements of Cotchett's fraud claim are that Romano falsely promised to enter into a joint venture with Cotchett with no intention to perform under the parties' oral contract, that Cotchett reasonably relied on Romano's promise, and that Romano's failure to perform as promised caused harm to Cotchett. (See *Behnke v. State Farm General Ins. Co.* (2011) 196 Cal.App.4th 1443, 1453 [elements of promissory fraud].) The service of the notice to quit does not supply any of those elements or form the basis for liability (*Park*, *supra*, 2 Cal.5th at p. 1063) and is merely evidence of Romano's intent and refusal to perform (*Gotterba*, *supra*, 228 Cal.App.4th at p. 42). Even if Romano never served the notice to quit, Cotchett would have the same claim that Romano falsely promised to allow Cotchett to operate the venture on Romano's property and then reneged on that promise.

Romano insists the action arises from protected conduct because if Cotchett "was never removed from the property, then none of her claims would exist. Since the legal method of removing her from the property is the service of the 30-Day Notice and the filing of the unlawful detainer, those are not merely evidence of wrongdoing, but the triggering acts themselves." Romano further contends the evidence submitted on the anti-SLAPP motion showed that Cotchett was not thrown out of the property in January 2023 as she alleges, but that she slowly removed her belongings from the property beginning in February. Thus, Romano argues the January 2023 demand to execute a lease was not the "triggering event" and "there are no other possible triggering events alleged in the [first amended complaint], or

10

established by the evidence" other than the service of the notice to quit and subsequent unlawful detainer filing. We are not persuaded.

First off, Romano's use of the phrase "triggering event" is problematic in light of the case law holding that a defendant cannot prevail on an anti-SLAPP motion by merely showing a cause of action is triggered by protected activity. (*City of Cotati*, *supra*, 29 Cal.4th at p. 78.) More to the point, the first amended complaint alleges that Romano repudiated the alleged contract in January 2023 when she demanded that Cotchett execute a lease agreement in order to continue the operation on Romano's land, even though this was not a term of their original agreement. It is further alleged that Romano demanded Cotchett return her keys to the property, refused to allow Cotchett onto the property to retrieve her equipment and plants, and continues to hold Cotchett's property. These allegations of unprotected conduct provide a sufficient factual basis for Cotchett's claims for purposes of our anti-SLAPP analysis.

Romano's reliance on *Birkner* and *Feldman* is unavailing, as the protected acts in those cases directly supplied the elements of the tenants' claims against the landlords. In *Birkner*, tenants served with a termination notice from their landlord filed a complaint against the landlord alleging wrongful eviction in violation of a rent ordinance, negligence, breach of the covenant of quiet enjoyment, and intentional infliction of emotional distress. (*Birkner*, *supra*, 156 Cal.App.4th at pp. 278–279.) The tenants argued the termination notice was unlawful because their household was protected from eviction under the rent ordinance due to age or disability and length of tenancy, and the notice failed to comply with procedural requirements of the rent ordinance. (*Id.* at p. 279.) In holding the complaint "indisputably arose from 'activity protected under the anti-SLAPP statute,'" *Birkner* observed

11

that '[t]he sole basis for liability' in each of plaintiffs' causes of action 'was the service of a termination notice, pursuant to Rent Ordinance,' and [the landlord's] 'refusal to rescind it after [p]laintiffs informed him that they constituted a protected household.' " (*Id.* at p. 283.)

In *Feldman*, the landlord filed an unlawful detainer action against a tenant and its subtenants, and the subtenants filed a cross-complaint against the landlord, its managing member, and the landlord's agent (Hawkins) alleging claims for retaliatory eviction, negligence, negligent misrepresentation, breach of the implied covenant of quiet enjoyment, wrongful eviction, breach of contract, and unfair business practices. (*Feldman*, *supra*, 160 Cal.App.4th at pp. 1474–1475.) *Feldman* concluded that "[w]ith the exception of the cause of action for negligent misrepresentation . . . , it appears that the cross-complaint was based entirely upon the alleged threats by Hawkins, the service of the notice to quit, and the filing of the unlawful detainer action itself," all of which were protected conduct. (*Id.* at p. 1479.) As relevant here, *Feldman* determined the defendants were entitled to anti-SLAPP protection against the contract claims because "[t]he activities that allegedly breached the contract *were* the protected activities." (*Id.* at p. 1484.)

Several courts have distinguished *Birkner* and *Feldman* for reasons applicable here. In *Ben-Shahar v. Pickart* (2014) 231 Cal.App.4th 1043 (*Ben-Shahar*), the court held that a tenant's complaint against his former landlords was "not directed at the act of defendants' filing the unlawful detainer proceedings or the parties' act of settling the matter," but aimed at their "acts constituting a purported breach of the settlement agreements based on their conduct in failing to occupy plaintiff's apartment in a timely fashion as required by" local ordinance. (*Id.* at p. 1053.) In so concluding, the

12

court distinguished *Birkner* and *Feldman* on the ground that in those cases, "the eviction notices and unlawful detainer actions were 'not merely cited as *evidence*' of the landlord's allegedly wrongful conduct but were the 'sole basis for liability.' " (*Ibid.*)

Similarly, in *Clark v. Mazgani* (2009) 170 Cal.App.4th 1281 (*Clark*), the court held that a tenant's action against her former landlord was based not on the landlord's filing or service of notices of intent to evict or his prosecution of an unlawful detainer action. Rather, the action was based on the "allegedly unlawful eviction, in that [the landlord] fraudulently invoked [a rent stabilization ordinance] to evict [the tenant] from her rent-controlled apartment as a ruse to provide housing for her daughter, but never installed her daughter in the apartment as required by that ordinance, and also that she failed to pay [the tenant's] relocation fee." (*Id.* at p. 1288.) *Clark* held that *Birkner* and *Feldman* were not controlling because in those cases, the gravamen of the complaint was the landlord's protected petitioning activity. (*Clark* at pp. 1288–1289.)

The same conclusion holds true here. Cotchett's first amended complaint does not even mention Romano's service of the notice to quit, much less allege it as the " 'sole basis for liability.' " (*Ben-Shahar*, *supra*, 231 Cal.App.4th at p. 1053.) Rather, the gravamen of the first amended complaint is Romano's repudiation of the parties' alleged contract permitting Cotchett to access and operate the flower business on Romano's property, not Romano's petitioning activity. (*Clark*, *supra*, 170 Cal.App.4th at pp. 1288–1289.)

For all of these reasons, we conclude the trial court properly denied Romano's anti-SLAPP motion at the first step because Cotchett's claims do

13

not arise from Romano's protected conduct of serving the notice to quit or prosecuting the unlawful detainer actions.

Finally, we address Cotchett's request for sanctions against Romano under section 425.16, subdivision (c). Cotchett argues she is entitled to sanctions because Romano's appeal is frivolous and "a transparent effort to delay discovery and obstruct [Cotchett's] ability to move this case forward."

Section 425.16, subdivision (c)(1), provides in pertinent part that "[i]f the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5." Attorney fees recoverable under the anti-SLAPP statute include appellate fees. (*Carpenter v. Jack in the Box Corp.* (2007) 151 Cal.App.4th 454, 461; *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 785.)

"An appeal is frivolous 'when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit.' [Citation.] 'Counsel and their clients have a right to present issues that are arguably correct. An unsuccessful appeal should not be penalized as frivolous if it " ' "presents a unique issue which is not 'indisputably' without merit" . . . , involves facts which are "not amenable to easy analysis in terms of existing law" . . . , or makes a reasoned "argument for the extension, modification, or reversal of existing law." ' " (*Workman v. Colichman* (2019) 33 Cal.App.5th 1039, 1062.)

Cotchett's sanctions request, presented in her respondent's brief and not by motion with a supporting declaration, does not comply with California Rules of Court, rule 8.276(b)(1). (See *FEI Enterprises, Inc. v. Yoon* (2011) 194

14

Cal.App.4th 790, 807 [declining to consider sanctions request on appeal for failure to comply with Cal. Rules of Court, rule 8.276(b)(1)].) In any event, from her arguments alone, Cotchett fails to persuade us that the appeal was brought "solely" to cause unnecessary delay (§ 425.16, subd. (c)(1)) and is indisputably without merit. Romano's arguments, though misguided, reflect an attempt to apply arguably favorable anti-SLAPP decisions in the unlawful detainer context. We therefore deny Cotchett's request for attorney fees under the anti-SLAPP statute.

## DISPOSITION

The trial court's order denying Romano's anti-SLAPP motion is affirmed. Cotchett is entitled to her costs on appeal.

_____
Fujisaki, J.

WE CONCUR:

_____
Tucher, P.J.

_____
Rodríguez, J.

*Cotchett v. Romano* (A169927)